899 P.2d 401

**Terry Michael TURNER,
Petitioner–Appellant,**

**v.**

**STATE of Hawai'i, Respondent–Appellee.**

**No. 16631.**

Intermediate Court of Appeals of Hawai'i.

June 20, 1995.

Certiorari Denied July 7, 1995.

Terry Michael Turner, Aiea, Petitioner–Appellant, pro se, on the brief.

Patricia A. Loo, Deputy Pros. Atty., City and County of Honolulu, on the brief, Honolulu, for respondent-appellee.

Before BURNS, C.J., and WATANABE, J., and SHIMABUKURO Circuit Judge in Place of ACOBA, J., Disqualified.

BURNS, Chief Judge.

Petitioner–Appellant Terry Michael Turner (Turner) appeals the First Circuit Court's October 21, 1992 order (October 21, 1992 Order) denying, without a hearing, his August 3, 1992 "Amended Petition for Post–Conviction Relief (Rule 40, HRPP)" (August 3, 1992 Amended Petition). We affirm.

## PRIOR PROCEEDINGS

On April 7, 1982, in Criminal No. 56933, Turner was indicted for Rape in the First Degree, Hawai'i Revised Statutes (HRS) § 707–730 (Supp.1981), of a woman on or about February 14, 1982. At the time of the alleged offense, Turner was training as a professional boxer. On July 2, 1984, Turner pled guilty to Assault in the First Degree, HRS § 707–710 (Supp.1972).

On September 13, 1984, the circuit court sentenced Turner to time served, probation for five years, and restitution. Because Turner failed to comply with his condition of probation, the circuit court, on September 3, 1986, revoked Turner's probation and sentenced him to be incarcerated for ten years.

On April 15, 1992, Turner filed a Hawai'i Rules of Penal Procedure (HRPP) Rule 40 "Petition for Post–Conviction Relief (Rule 40, HRPP)." Turner's August 3, 1992 Amended Petition alleged fourteen grounds of relief (A through N), in essence, as follows:

(1) he was wrongfully indicted because there was no factual basis for the indictment (L);

(2) the State maliciously prosecuted him notwithstanding insufficient evidence (M);

(3) his plea was not understandingly made (I, J);

(4) his guilty plea was unacceptable because there was no factual basis for the plea (A);

(5) the sentence is illegal and the trial court unlawfully revoked his probation (N);

(6) he was incompetent when he made a statement to the police, pled guilty, and was sentenced, and when the circuit court revoked his prior sentence and sentenced him to incarceration (E, F, G, H);

(7) Anne Randolph and Jerry Wilson provided ineffective assistance of counsel (B, C, D, K).

On October 21, 1992, the circuit court entered an Order Denying Petition for Post–Conviction Relief Without a Hearing (October 21, 1992 Order). The circuit court decid-

ed that grounds A through D were waived pursuant to HRPP Rule 40(a)(3)[1] because Turner knowingly and understandingly failed to raise the issues at the change of plea proceeding on July 2, 1984 and the remaining grounds were "patently frivolous and without [a] trace of support either in the record or from other evidence submitted by the Petitioner[.]"

## DISCUSSION

The question is whether the circuit court reversibly erred in denying Turner's August 3, 1992 Amended Petition without a hearing.

HRPP Rule 40(f) (1989), which governs post-conviction hearings, provides in pertinent part that:

> If a petition alleges facts that if. proven would entitle the petitioner to relief, the court shall grant a hearing which may extend only to the issues raised in the petition or answer. However, the court may deny a hearing if the petitioner's claim is patently frivolous and is without trace of support either in the record or from other evidence submitted by the petitioner.

■ Although court records in other cases are not part of the record on appeal, *Orso v. City and County of Honolulu*, 55 Haw. 37, 38, 514 P.2d 859, 860 (1973); *see State v. Lewis*, 6 Haw.App. 624, 626, 736 P.2d 70, 72 (1987), we may take judicial notice of them. *See Eli v. State*, 63 Haw. 474, 478, 630 P.2d 113, 116 (1981).

In explaining Rule 40(f), we have stated:

> As a general rule, a hearing should be held on a Rule 40 petition for post-conviction relief where the petition states a colorable claim. *[State v.] Schrock*, [149 Ariz. 433, 719 P.2d 1049 (1986)]. To establish a colorable claim, the allegations of the peti-

tion must show that if taken as true the facts alleged would change the verdict, *State v. Lemieux*, 137 Ariz. 143, 669 P.2d 121 (Ct.App.1983); however, a petitioner's conclusions need not be regarded as true. *Phillips v. State*, 108 Idaho 405, 700 P.2d 27 (1985). Where examination of the record of the trial court proceedings indicates that the petitioner's allegations show no colorable claim, it is not [an] error to deny the. petition without a hearing. *Widermyre v. State*, 452 P.2d 885 (Alaska 1969). The question on appeal of a denial of a Rule 40 petition without a hearing is whether the trial court record indicates that Petitioner's application for relief made such a showing of a colorable claim as to require a hearing before the lower court. *Id.*

*State v. Allen*, 7 Haw.App. 89, 92–93, 744 P.2d 789, 792–93 (1987). The Hawai'i Supreme Court adopted this analysis of HRPP Rule 40(f) in *Dan v. State*, 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994).

■ *Allen*'s use of the word "conclusions" needs to be explained. In *Kraft v. State*, 100 Idaho 671, 603 P.2d 1005 (1979), the petitioner alleged that his counsel only met with him for thirty-five minutes three days prior to the trial and, therefore, he had been the victim of ineffective assistance of counsel. The Idaho Supreme Court stated that "[i]n such a situation, . . ., this Court must accept the petition's allegations as true, but need not accept its conclusions." *Id.* 603 P.2d at 1008. It then decided that it was required to believe the alleged facts that the petitioner's counsel only met with petitioner for thirty-five minutes three days prior to the trial but was not required to believe the alleged conclusion that such facts add up to incompetence. In our view, the allegation that such facts add up to incompetence alleges an ultimate fact. The allegation that such incompetence consti-

---

1. Hawai'i Rules of Penal Procedure Rule 40(a)(3) states as follows:

    (3) *Inapplicability.* Rule 40 proceedings shall not be available and relief thereunder shall not be granted where the issues sought to be raised have been previously ruled upon or were waived. An issue is waived if the petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas

corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under this rule, and the petitioner is unable to prove the existence of extraordinary circumstances to justify the petitioner's failure to raise the issue. There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure.

tuted ineffective assistance of counsel alleges a conclusion of law.

The dispositive question is whether the alleged facts, if proven, would entitle Turner to relief. If the answer is yes, Turner should have had a hearing. If the answer is no, we must affirm.

■ "The issue whether the trial court erred in denying a Rule 40 petition without a hearing based on no showing of a colorable claim is reviewed *de novo;* thus, the right/wrong standard of review is applicable." *Stanley v. State,* 76 Hawai'i 446, 448, 879 P.2d 551, 553 (1994) (citing *Dan v. State,* 76 Hawai'i at 427, 879 P.2d at 532).

We conclude that only Turner's grounds E, F, G, and H merit our discussion. In these four grounds, Turner alleges that he was mentally incompetent in 1982 when he made a statement to the police, in 1984 when he pled guilty and was sentenced, and in 1986 when the circuit court revoked his prior sentence and sentenced him to incarceration.

■ A defendant must be mentally competent in order to be tried. HRS § 704–403 (1985), which provides the standard of competence to stand trial in Hawai'i, states: "No person who as a result of a physical or mental disease, disorder, or defect lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity endures."

■ In *Godinez v. Moran,* —— U.S. ——, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993), the United States Supreme Court reiterated its holding in *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), "that the standard for competence to stand trial is whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'" *Godinez,* —— U.S. at ——, 113 S.Ct. at 2685.

■ Therefore, to obtain relief, Turner must prove that in February 1982, on July 2, 1984, on September 13, 1984, and/or on September 3, 1986 (A) a mental disease, disorder, or defect was causing Turner to lack the capacity to understand the proceedings against him, to assist in his own defense, or to plead guilty; or (B) at that time Turner did not have (i) sufficient ability to consult with his lawyer with a reasonable degree of rational understanding, and/or (ii) a rational, as well as factual, understanding of the proceedings against him.

The relevant alleged facts are as follows. In a statement typed and signed in 1992, but not notarized, Virginia O. Turner, Turner's mother, states that Turner's maternal uncle suffered from mental illness and his oldest and youngest brothers suffer from mental illnesses.

In a statement typed and signed in 1992, but not notarized, Malinda G. Turner, Turner's oldest sibling, states that Turner suffered a head injury in a car accident in November 1971, then entered the Navy in 1972 but suffered an attitude change and was unable to complete his Navy enlistment.

In a written statement dated January 24, 1992, Turner states that he suffered a "head injury" in 1971 when a car he was driving "hit a telegram pole, spliting [sic] it and ran through a brick wall of the church" but that he "had no visiable [sic] brain damage, chest injury, no broken bones so [he] was release [sic] from the hospital that night." He also states that:

> I am very intelligent so I have got by as not having anything wrong with me....
>
> \* \* \* \* \* \*
>
> My mother's brother died in a mental institution, my older brother is 100 percent disabled from his job for mental health reasons and since 1982 my younger brother is also on 100% disability for mental health reasons.

Nancy A. Haynie, Ph.D., began working with Turner on August 12, 1988. "[B]ased on [her] clinical work with him, on psychological test data of August 1987, and on psychosocial assessments in September 1989[,]" she, on August 12, 1988 and October 6, 1989, diagnosed Turner as suffering from "Organic Brain Syndrome" and a narcissistic personality.

On August 8, 1989, Sim E. Granoff, Ph.D. (Dr. Granoff), diagnosed Turner as suffering from a "Delusional, Paranoid, Disorder."

On March 1, 1991, T.W. Breckenridge, PSW IV, diagnosed Turner as suffering from a "Delusional (Paranoid) Disorder."

On February 19, 1992, Dr. Granoff diagnosed Turner as suffering from "Delusional Disorder and Personality Disorder, Not Otherwise Specified" but that "[a]t the present time, [Turner] understands the criminal proceeding against him and he is able to assist in his own defense. He is fit to proceed at this time." Dr. Granoff further stated that:

> In my opinion, the diagnoses at the time of the alleged conduct [in 1991[2]] were Delusional Disorder and Personality Disorder, Not Otherwise Specified. At the time of the alleged conduct, the defendant was *not* impaired so as to be unable to appreciate the wrongfulness of his conduct by any mental disease, disorder, or defect. At the time of the alleged conduct, the defendant was *not* impaired so as to be unable to conform his conduct to the requirements of the law by any mental disease, disorder, or defect. He lacked neither substantial cognitive nor volitional capacity at the time of the alleged conduct.

(Emphasis in original.)

On February 6, 1992, Jarret H.C. Ko, M.D., diagnosed Turner as follows:

> [M]y diagnosis of [Turner] at the time of the alleged incident [in 1991] is:
>
> Probable Organic Mental Disorder
>
> Possible Schizophrenia
>
> Possible personality disorder
>
> It is my opinion that [Turner] is presently capable of understanding the proceedings against him and of assisting in his own defense.
>
> It is also my opinion that the defendant's cognitive and volitional capacities were probably impaired at the time of the alleged offense(s); but I cannot say that they were substantially impaired.

On February 13, 1992, Gary M. Farkas, Ph.D., diagnosed Turner as follows:

> Mr. Turner understands the charges against him and may cooperate in his defense. Mr. Turner may be diagnosed as suffering from Delusional Disorder, Persecutory Type (297.10) and Personality Disorder, NOS, with narcissistic and antisocial features (301.90). *Mr. Turner is fit to proceed.*
>
> At the time of the instant offenses [in 1991], Mr. Turner could have been diagnosed as *suffering from Delusional Disorder, Persecutory Type (297.10) and Personality Disorder, NOS, with narcissistic and antisocial features (301.90).* With respect to the charge of Assault, Mr. Turner clearly suggested to me that he does not feel that he assaulted anyone and records at Halawa indicate that there are eyewitnesses who have vouched for his version of the event that transpired. I do not believe that Mr. Turner's mental illness is an issue pertaining to this charge.
>
> With respect to the charge of Terroristic Threatening, Mr. Turner appears to have written the threatening letter for the specific purpose of having Mr. Kelly leave him alone. Mr. Turner's delusional disorder apparently caused him to believe that he was the victim of a plot, and indeed, Mr. Turner has a long history of filing complaints regarding Mr. Kelly and other members of the treatment staff at Halawa. It is my opinion that Mr. Turner wrote the threatening letter as a last resort, after other unsuccessful attempts to deal with what he perceived as threats from Mr. Kelly. *It is my opinion that as a result of the aforementioned delusional disorder, Mr. Turner lacked cognitive capacity to appreciate the wrongfulness of his behavior at the time of this offense.* I believe that Mr. Turner had volitional capacities at this time.
>
> Mr. Turner has a relatively fixed delusional disorder that has not been successfully treated. . . .

(Emphasis in original.)

In the October 19, 1992 findings of fact in Criminal No. 91–2848, the circuit court found

**2.** Dr. Sim E. Granoff made this diagnosis in connection with Criminal Nos. 91–2501 and 91–2848 brought against Petitioner–Appellant Terry

Michael Turner in 1991. The same is true of the diagnoses by Drs. Jarret H.C. Ko and Gary M. Farkas reported hereafter.

that Turner "suffers from a serious mental disorder, namely a Paranoid Delusional Disorder" and "[his] mental disorder renders him incapable of making a knowing and intelligent waiver of his right to counsel."

In contrast, a September 30, 1993 Judicial Determination of Fitness to Proceed in Criminal No. 91–2501 states that Turner "is presently able to understand the proceedings against him/her and is able to assist in his/her own defense[.]"

Briefly stated, the following are the relevant facts: Turner's maternal uncle, oldest brother, and youngest brother suffered or suffer from mental illnesses; Turner suffered a head injury in a car accident in November 1971; Turner suffered an attitude change in the Navy in 1972 and was unable to complete his military duty; Turner has suffered from a mental disease, disorder, or defect since August 1987.

■ Do these facts entitle Turner to relief? Do they establish a colorable claim that Turner was mentally incompetent in February 1982, July and September 1984, and/or September 3, 1986? Our answer to these questions is no. Nothing connects the above facts to the relevant time period from February 1982 through September 1986. There is no evidence that Turner suffered from a mental disease, disorder, or defect prior to August 1987. The above facts pertaining to the early 1970s and commencing August 1987 do not support a finding that Turner was mentally incompetent at the relevant times in 1982, 1984, and/or 1986.

## CONCLUSION

Accordingly, we affirm the circuit court's October 21, 1992 Order denying, without a hearing, petitioner Terry Michael Turner's August 3, 1992 "Amended Petition for Post–Conviction Relief (Rule 40, HRPP)."