18 P.3d 871

Manuel FRAGIAO,
Respondent/Petitioner–Appellant,

v.

STATE of Hawai'i,
Petitioner/Respondent–Appellee.

No. 22636.

Supreme Court of Hawai'i.

Jan. 9, 2001.

As Amended Jan. 16, 2001.

Simone C. Polak, Deputy Prosecuting Attorney, County of Maui, on the application for petitioner/respondent-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, and ACOBA, JJ.

Opinion of the Court by ACOBA, J.

We granted the application for writ of certiorari filed by Petitioner/Respondent–Appellee State of Hawai'i to review the reversal by the Intermediate Court of Appeals (the ICA) of the May 25, 1999 order of the third circuit court (the court) denying the Hawai'i Rules of Penal Procedure (HRPP) Rule 40 petition for post-conviction relief filed by Respondent/Petitioner–Appellant Manuel Fragiao. Fragiao had appealed solely from that part of the court's order denying his claim that his trial counsel's purported conflict of interest rendered the representation afforded him ineffective. We vacate the ICA's

reversal and affirm the said order and the June 14, 1999 order denying reconsideration [1] based on our holding herein that an attorney "employed and paid by the county" for the benefit of a police officer, such as Fragiao, to defend the officer in a criminal case pursuant to Hawai'i Revised Statutes (HRS) § 52D–8(1) (1993) and in related civil cases, *see* HRS § 52D–8(2), in which the County has asserted claims adverse to the officer, is not *per se,* by virtue of such employment and payment, deemed ineffective counsel or in violation of the conflict of interest provisions in Hawai'i Rules of Professional Conduct (HRPC) Rules 1.7(b) and 1.8(f).

I.

The following matters are contained in the record on appeal.

On September 21, 1994, Fragiao, a County of Hawai'i police officer then on special duty, allegedly assaulted Tracy Otani while directing traffic at the intersection of Punahele Street and Kaumana Drive on the island of Hawai'i. In connection with this incident, on February 16, 1996, Fragiao was charged with assault in the third degree, HRS § 707–712 (1993).[2] Otani filed civil complaints against Fragiao and the County (as Fragiao's employer), which, on or about July 24, 1996, were removed to the United States District Court for the District of Hawai'i and styled *Otani v. Fragiao, et al.,* Civil No. 96–00632ACK, and *Otani v. County of Hawai'i et al.,* Civil No. 96–00633DAE, respectively [126 F.Supp.2d 1299].

On July 9, 1996, Fragiao retained and was represented by Alika Thoene, Esq. Fragiao was arraigned on the assault charge in the court, and trial was scheduled for September 3, 1996. On August 19, 1996, Thoene filed a Motion to Continue Trial, indicating that Michael Green, Esq., would replace Thoene as Fragiao's privately retained counsel. A writ-

---

1. The ICA did not mention the order denying reconsideration in its opinion.

2. HRS 707–712 states in pertinent part, as follows:

**Assault in the third degree.** (1) A person commits the offense of assault in the third degree if the person:

(a) Intentionally, knowingly, or recklessly causes bodily injury to another person[.]

. . . .

(b) Assault in the third degree is a misdemeanor unless committed in a fight or scuffle entered into by mutual consent, in which case it is a petty misdemeanor.

ten withdrawal and appearance of counsel was attached as Exhibit A to the motion, but not signed by Green, and Green did not file a written appearance in the case. The motion was subsequently granted by written order dated September 11, 1996, and trial was continued to December 16, 1996.

Sometime during the pendency of the criminal and civil trials, Fragiao requested that the County of Hawai'i provide him with a defense in these matters. Pursuant to HRS §§ 52D–8 and 52D–9 (1993),[3] the Hawai'i County Police Commission (HCPC) determined that Fragiao was entitled to be represented by counsel provided by the County.[4] *See Alejado v. City and County of Honolulu*, 89 Hawai'i 221, 231, 971 P.2d 310, 320 (App.1998) (holding that under HRS § 52D–9, commission's exercise of discretion as to whether counsel should be provided police officer who allegedly struck an arrestee is subject to judicial review but conclusive for purposes of the County's review). Despite Fragiao's wishes, the County did not hire Green, who, at the time, represented a number of police officers in an unrelated suit against the County. Instead, in accordance with the provisions of HRS § 103D–304 (1995),[5] the procurement practices statute, the HCPC selected Gregory Ball, Esq. from among the candidates who responded to the County's "Notice to Providers of Legal Services" as "most qualified" to represent Fragiao in the criminal and civil cases.[6]

The December 30, 1996[7] Agreement for

---

3. HRS § 52D–8 provides as follows:
    **Police officers; counsel for.** Whenever a police officer is prosecuted for a crime or sued in a civil action for acts done in the performance of the officer's duty as a police officer, the police officer shall be represented and defended:
    (1) *In criminal proceedings by an attorney to be employed and paid by the county in which the officer is serving;* and
    (2) In civil cases by the corporation counsel or county attorney of the county in which the police officer is serving.
    (Emphasis added.)
    HRS § 52D–9 states in pertinent part as follows:
    **Determination of scope of duty.** The determination of whether an act, for which the police officer is being prosecuted or sued, was done in the performance of the police officer's duty, so as to entitle the police officer to be represented by counsel provided by the county, shall be made by the police commission of the county.... The determination of the police commission shall be conclusive for the purpose of this section and section 52D–8.
    "HRS §§ 52D–8 and 52D–9 were designed to maintain the morale of the police force in light of an increasing number of lawsuits being brought against them." *Alejado v. City and County of Honolulu*, 89 Hawai'i 221, 231, 971 P.2d 310, 320 (App.1998) (citing Senate Stand. Comm. Rep. No. 376 on H.B. 247, in 1941 Senate Journal, at 860–61).

4. The record does not indicate the date on which the HCPC made this determination.

5. HRS § 103D–304, governing "Procurement of professional services" at the time the County hired Ball, provided in relevant part:
    (c) The head of the purchasing agency shall designate a review committee consisting of a minimum of three employees from the agency or from another governmental body.... The committee shall review and evaluate all submissions and other pertinent information....
    (d) Whenever during the course of the fiscal year the agency needs a particular professional service, the head of the purchasing agency shall designate a screening committee to evaluate the statements of qualification and performance data of those persons on the list prepared pursuant to subsection (c) along with any other pertinent information, including references and reports.... The screening committee shall establish criteria for the selection, and evaluate the submissions of persons on the list prepared pursuant to subsection (c).... The committee shall provide the head of the purchasing agency with the names of the three persons who the committee concludes is [sic] the most qualified to provide the services required, with a summary of each of their qualifications....
    (e) The head of the purchasing agency shall evaluate the summary of qualifications for each of the three persons provided by the screening committee.... The head of the purchasing agency shall then rank the three persons in order of preference. The head of the purchasing agency shall negotiate a contract with the first person.... Negotiations shall be conducted confidentially.

6. According to the subsequent Agreement for Special Counsel, the three members of the Corporation Counsel committee that selected Ball were not involved in the related federal court litigation.

7. Although the Agreement for Special Counsel between Ball and the County is dated December 30, 1996, no party raises any question with respect to the execution of the agreement having occurred after Fragiao's conviction on December 9, 1996.

Special Counsel [8] between Ball and the County acknowledged that in the civil cases, the County intended to rely on the defense that Fragiao was not acting within the scope of his employment when he allegedly assaulted Otani and to deny indemnification of Fragiao for any punitive damage award arising from the civil cases. The agreement also related that the Office of Corporation Counsel for the County could not ethically represent the County and Fragiao—both defendants in the civil cases—due to the "conflict of interest" created by the County's reliance on the above-mentioned defense and its cross-claims for indemnification against Fragiao in Civil No. 96–00632ACK and Civil No. 96–00633DAE.

Under the agreement, the County would compensate Ball at an hourly rate of $125, not to exceed $5000 for Fragiao's criminal case,[9] and $10,000 for each civil matter for a total of $25,000. Additionally, as special counsel, Ball was permitted to use the Corporation Counsel's research resources at no cost and would be reimbursed for "all reason-

able out-of-pocket expenses" and inter-island travel. The agreement specifically provided that "the parties agree and acknowledge that Special Counsel [Ball] is an independent contractor while providing professional legal services for defendant Fragiao."

On October 29, 1996, the court approved the withdrawal of Thoene as counsel and appearance of new counsel, Ball, on Fragiao's behalf. Ball represented Fragiao in the criminal trial, *State v. Fragiao*, Cr. No. 96–242, which commenced on December 3, 1996. Six days later, on December 9, 1996, the jury convicted Fragiao of assault in the third degree. On February 4, 1997, judgment was entered against Fragiao and Ball filed a notice of appeal.

On April 24, 1997, the court approved a substitution of counsel wherein Ball withdrew as counsel and Brian DeLima, Esq. entered his appearance as appellate counsel. DeLima filed Fragiao's Opening Brief on July 21, 1997, raising, *inter alia*, ineffective counsel

---

8. The relevant portions of the Agreement provided:

> WHEREAS, the County intends to rely on the defense that defendant Fragiao was not acting under the color of his lawful authority, and was not an agent, employee or representative of the County at the time he allegedly committed the criminal, unconstitutional and tortious actions . . .; and
>
> . . . .
>
> WHEREAS, the County shall not indemnify defendant Fragiao for any punitive damage awards arising from Civil No. 96–00632ACK and Civil No. 96–00633DAE; and
>
> . . . .
>
> WHEREAS, the Office of Disciplinary Counsel, Supreme Court of the State of Hawaii has previously rendered an opinion that an inherent "conflict of interest" exists in representing multiple defendants, by the Office of the Corporation Counsel, where, as in the present cases, the County intends to rely on the defense that Fragiao acted beyond the color and scope of his authority as granted by law and any alleged act performed was not as an agent, employee or representative of the County and has accordingly filed cross-claims in Civil No. 96–00632ACK and Civil No. 96–00633DAE;
>
> . . .
>
> NOW, THEREFORE, the parties agree as follows:
>
> . . . .
>
> B. The County shall reimburse Special Counsel for all reasonable out-of-pocket expenses, including filing and service fees, wit-

ness fees, telephone and telegraph communications, courier or messenger services, copying or printing of all records and briefs and travel expenses. Special Counsel shall, as condition of such reimbursement, present copies of all invoices and/or receipts for such out-of-pocket expenses. Special Counsel may, at his option, send invoices to the County for payment.

> . . . .
>
> E. The parties agree and acknowledge that Special Counsel is an independent contractor. . . .
>
> F. That in no event shall the County pay Special Counsel more than a total of FIVE THOUSAND AND NO/100 DOLLARS ($5,000) for Cr. No. E–47465/HL, renumbered Cr. No. 96–242, not more than a total of TEN THOUSAND AND NO/100 DOLLARS for Civil No. 96–00632ACK and not more than a total of TEN THOUSAND AND NO/100 DOLLARS ($10,000) for Civil No. 96–00633DAE for professional legal services rendered in the above-entitled cases. . . . Special Counsel's time will be billed against this compensation cap at the rate of ONE HUNDRED TWENTY–FIVE AND NO/100 DOLLARS ($125.00) per hour.

9. The $5000 fee to be paid for the misdemeanor charge exceeded the statutory fee provision for court appointed attorneys of $1500 for a misdemeanor jury trial case. *See* HRS § 802–5(b)(2) (1993).

arguments based on four separate grounds.[10]

On the same day that DeLima filed his Opening Brief, he also filed, in this court, a motion to remand the case to the court for an evidentiary hearing on additional alleged ineffective assistance claims stemming from 1) Ball's failure to call certain police officers to impeach Otani's testimony, and 2) a purported conflict of interest arising from the County's selection of Ball as defense counsel. This court denied Fragiao's remand motion by order dated August 29, 1997, on the ground that "HRS 641-2 provides that every appeal shall be taken on the record and no new evidence shall be introduced in the supreme court."[11] On October 23, 1997, the State filed its Answering Brief and on November 17, 1997, Fragiao filed his Reply Brief. Fragiao's appeal was assigned to the ICA by assignment order dated February 24, 1998. On June 25, 1998, in S.Ct. No. 20454, the ICA issued a summary disposition order (SDO)[12] simply affirming Fragiao's conviction.

On September 14, 1998, Robert Crudele, Esq., DeLima's law partner, filed the instant Petition. In it, Fragiao argued, among other things, that Ball's representation was constitutionally ineffective for conflict of interest

stemming from the County's selection of Ball over Green "at a time when the County intended and, in fact, did sue Officer Fragiao [in the civil cases] for indemnification arising out of the same facts and circumstances which were the subject of the [c]riminal [p]roceeding." According to Fragiao, a criminal conviction would enhance the County's position that Fragiao was acting outside the scope of his employment when the alleged assault occurred, thereby relieving the County of liability in the civil cases.[13] Fragiao also maintained that Ball owed "some apparent measure of loyalty" to the County because it paid his fees, could make decisions regarding the employment agreement, and might provide him with future employment.

The State filed its response to Fragiao's Rule 40 Petition on November 19, 1998, arguing with respect to the conflict claim that Rule 40(a)(3)[14] barred Fragiao from raising the conflict issue and no conflict of interest existed. On March 15, 1999, the court apparently transmitted to both parties an unfiled ruling denying the Petition. On March 23, 1999, DeLima filed a motion for reconsideration, apparently in light of the ruling. In response, on April 22, 1999, the State filed a

---

**10.** In his opening brief, Fragiao raised the following grounds concerning ineffective assistance: (1) Ball failed to file a motion in limine regarding a prior relationship between Otani's wife and Fragiao; (2) Ball failed to conduct adequate voir dire regarding the alleged relationship; (3) the stipulation of a witness's testimony failed to provide the impeachment that her actual presence and testimony would generate; and (4) Ball's closing statement was essentially an admission of guilt.

**11.** HRPP Rule 40(a)(1) provides in pertinent part that "a petition under this rule seeking relief from judgment may be filed during the pendency of direct appeal if leave is granted by order of the appellate court."

**12.** A SDO is an unpublished dispositional order that remains uncited except when the opinion contained in the order establishes the law of the pending case, or other proceeding involving the same respondent. *See* Hawai'i Rules of Appellate Procedure Rule 35(c). *Cf. Chun v. Board of Trustees of Employees' Retirement Sys. of the State of Hawai'i*, 92 Hawai'i 432, 446, 992 P.2d 127, 142 (2000) (stating that "although this jurisdiction has yet expressly to articulate the rule, other jurisdictions have adopted the position that unpublished opinions of trial courts have no

precedential value") (citing *Kitsap County v. Allstate Ins. Co.*, 136 Wash.2d 567, 578 n. 10, 964 P.2d 1173, 1179 n. 10 (1998) (holding that unpublished opinions have no precedential value)).

**13.** As the State points out in its certiorari application, this argument appears "illogical—the County's primary interest would be to have Fragiao acquitted in the criminal case so his conviction could not be introduced at the civil trial."

**14.** HRPP Rule 40(a)(3) provides:

(3) *Inapplicability.* Rule 40 proceedings shall not be available and relief thereunder shall not be granted where the issues sought to be raised have been previously ruled upon or were waived. An issue is waived if the petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under this rule, and the petitioner is unable to prove the existence of extraordinary circumstances to justify the petitioner's failure to raise the issue. There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure.

memorandum in opposition to Fragiao's reconsideration motion. Subsequently, on May 25, 1999, the court issued Findings of Fact, Conclusions of Law and an Order Denying Fragiao's Rule 40 Petition. In its Order, the court ruled *inter alia* that HRPP Rule 40(a)(3) barred Fragiao's conflict of interest claim. The court denied Fragiao's reconsideration motion on June 14, 1999. Shortly thereafter, on June 22, 1999, Fragiao filed a notice of appeal in the instant case, S.Ct. No. 22636.

## II.

Fragiao's appeal was assigned to the ICA on December 15, 1999. The sole ground asserted in his appeal was that Ball's conflict of interest rendered Ball's representation ineffective. Fragiao argued, thus, that with respect to this ground, the court had erred (1) in denying his Rule 40 petition without a hearing, and (2) in concluding his petition was barred under Rule 40(a)(3).

On August 3, 2000, the ICA reversed the court's decision. *Fragiao v. State*, 95 Hawai'i 53, 18 P.3d 915 (Haw.Ct.App.2000). The ICA addressed the Rule 40(a)(3) issue first, concluding that DeLima's failure to raise the conflict of interest argument on direct appeal presented an ineffective assistance of appellate counsel "issue." *Id.* at 57, 18 P.3d at 919. However, in the interest of "avoid[ing] further indirect proceedings," the ICA "ignor[ed] the waiver issue and address[ed]" the merits of Fragiao's conflict of interest argument. *Id.* at 58, 18 P.3d at 920.

The ICA's discussion appears to acknowledge that Fragiao's conflict of interest argument would fail under the rationale of *Finley v. Home Ins. Co.*, 90 Hawai'i 25, 975 P.2d 1145 (1998). 95 Hawai'i at 59, 18 P.3d at 921. In *Finley*, this court held, *inter alia*, that although an insurer defending an insured under a reservation of rights clause in an insurance policy has "divergent economic interests in the outcome of the litigation," HRPC Rule 1.7(b) does not bar an attorney retained by the insurer from representing

the insured unless the representation is "materially limited" by such an arrangement, 90 Hawai'i at 32, 975 P.2d at 1152, and that HRPC Rule 1.8(f) did not preclude such an attorney from "accept[ing] payment for a defense of the insured" from the insurer. *Id.* at 33, 975 P.2d at 1153. However, the ICA reasoned that *Finley* was a civil case, that Rules 1.7(b) and 1.8(f) are applied more forcefully in criminal cases, and that this court's decision in *State v. Richie*, 88 Hawai'i 19, 960 P.2d 1227 (1998), not *Finley* (by negative inference), was controlling. 95 Hawai'i at 59, 18 P.3d at 921. Applying *Richie* and Rules 1.7(b) and 1.8(f), the ICA determined that a conflict of interest had existed and the record did not reflect Fragiao's "consent after full consultation" to Ball's hiring:

> Unless and until the requirements of *Richie* and [HRPC Rules 1.7(b) and 1.8(f)] are satisfied, the lawyer selected and/or paid by a third party may not represent the defendant. When the defendant does not consent after full consultation, it is the defendant's burden to seek and obtain an alternative....
>
> ... It is Fragiao's burden to show that Ball did not obtain Fragiao's consent after full consultation. *Richie*, 88 Hawai'i at 45, [960 P.2d at 1253]. In our view, Fragiao did as much as he could to prove the negative.... There is no evidence of consultation or consent.

95 Hawai'i at 60, 18 P.3d at 922. Accordingly, the ICA concluded that Ball's representation of Fragiao was violative of HRPC Rules 1.7(b) and 1.8(f) and, correspondingly, constitutionally ineffective. *Id.* at 60–61, 18 P.3d at 922–23.

## III.

On September 5, 2000, the State filed an application for a writ of certiorari requesting that this court reverse the ICA's decision. The State argues that the ICA erroneously held that a conflict existed under HRPC Rules 1.7(b) and 1.8(f) and that *Richie*, interpreted accurately, actually supports the State's, as opposed to Fragiao's, position.[15]

**15.** Notably, the State no longer contends that HRPP Rule 40(a)(3) bars Fragiao from pursuing the conflict of interest argument.

## IV.

### A.

We consider, first, whether Rule 40 barred Fragiao's petition. Upon its consideration of the court order, it was incumbent upon the ICA to conduct a de novo review of the court's Rule 40 "waiver" determination, and to apply a "right/wrong" standard to the court's judgment. *See Barnett v. State*, 91 Hawai'i 20, 26, 979 P.2d 1046, 1052 (1999) (holding that when deciding whether the Rule 40 petition made such a showing of a colorable claim as to require a hearing, "the appellate court steps into the trial court's position, reviews the same trial record, and redecides the issue"; and, that, because the appellate court's determination of whether a colorable claim exists is a question of law, the trial court's decision is reviewed de novo); *Stanley v. State*, 76 Hawai'i 446, 448, 879 P.2d 551, 553 (1994) (stating that "the issue whether the trial court erred in denying a Rule 40 petition without a hearing based on no showing of a colorable claim is reviewed de novo; thus, the right/wrong standard of review is applicable"). Because the waiver issue was not addressed by the ICA, we examine the petition de novo.

To reiterate, Fragiao's Rule 40 petition essentially claimed that

> a conflict of interest existed because the County hired and paid for special counsel to represent [Fragiao] in [his] criminal case, while simultaneously being involved in a civil suit where the County intended to defend on the basis that [Fragiao] was acting outside the scope of his employment and therefore the County was not liable for his actions.

In the petition, Fragiao stated that he "relied upon [Ball] to ... comport with ... duties owed to [him]" and "did not recognize ... the basis of [his] claim of ineffective assistance of counsel or [he] would have raised it sooner." The claim, Fragiao maintained, was "brought to [his] attention by [his] present legal counsel."

Aside from the Petition, "other evidence" judicially noticed by the court were Fragiao's motion for remand and the ICA's summary disposition order in S.Ct. No. 20454. In the motion for remand, DeLima claimed the Corporation Counsel's selection of Ball was made while "Corporation Counsel was in direct conflict with [Fragiao] in two civil cases." DeLima apparently sought remand because the record on appeal was "void of factual findings regarding the hiring of trial counsel by the County." In his attached affidavit to that motion, Fragiao stated he "applied to the [Commission] for appointment of counsel pursuant to [HRS § ] 52D-8 and 52D-9," he "had sought to hire [Green]," "Corporation Counsel indicated ... [he] would be provided counsel which the Corporation Counsel would hire and negotiate the terms of [his] representation," he "was told who would be hired and also told [he] had no choice other than that of [Ball]." In the attached memorandum, DeLima maintained that the conflict should have prevented the County, through its corporation counsel, from selecting Fragiao's counsel.

### B.

A Rule 40 proceeding may be dispensed with if the issues raised in the petition "have been previously ruled upon or were waived," HRPP Rule 40(a)(3); *see Stanley*, 76 Hawai'i at 450, 879 P.2d at 555; *see also State v. Silva*, 75 Haw. 419, 435–36, 864 P.2d 583, 591 (1993); *Turner v. Hawai'i Paroling Auth.*, 93 Hawai'i 298, 306, 1 P.3d 768, 776 (App. 2000), or the "claim is patently frivolous and is without a trace of support either in the record or from other evidence submitted." HRPP Rule 40(f); *see Barnett*, 91 Hawai'i at 26, 979 P.2d at 1052; *Cacatian v. State*, 70 Haw. 402, 404, 772 P.2d 691, 693 (1989); *Lincoln v. State*, 66 Haw. 566, 567, 670 P.2d 1263, 1263–64 (1983); *Turner v. State*, 79 Hawai'i 118, 120, 899 P.2d 401, 403 (App.), *cert. denied*, 79 Hawai'i 341, 902 P.2d 976 (1995). On the other hand, "if a petition alleges facts that if proven would entitle the petitioner to relief, the court shall grant a hearing[.]" HRPP Rule 40(f); *see State v. Allen*, 7 Haw.App. 89, 92–93, 744 P.2d 789, 792–93 (1987), *overruled on other grounds by Dan v. State*, 76 Hawai'i 423, 427, 879 P.2d

528, 532 (1994); *see also Barnett*, 91 Hawai'i at 26, 979 P.2d at 1052; *Stanley*, 76 Hawai'i at 448, 879 P.2d at 553; *Turner*, 93 Hawai'i at 312, 1 P.3d at 781.

Rule 40(a)(3) provides in pertinent part that "[a]n issue is waived if the petitioner knowingly and understandingly failed to raise it [ (a rebuttable presumption of knowing and understanding failure arising from such omission) ], and it could have been raised before the trial, at the trial, on appeal, . . . [in] any other proceeding actually conducted, or in a prior proceeding actually initiated under this rule," *see Tachibana v. State*, 79 Hawai'i 226, 232, 900 P.2d 1293, 1299 (1995); *Raines v. State*, 79 Hawai'i 219, 221 n. 1, 900 P.2d 1286, 1288 n. 1 (1995); *Stanley*, 76 Hawai'i at 450, 879 P.2d at 555; *Silva*, 75 Haw. at 435–36, 864 P.2d at 591; *Turner*, 93 Hawai'i at 306, 1 P.3d at 776; *Turner*, 79 Hawai'i at 120 n. 1, 899 P.2d at 403 n. 1, and the petitioner is unable to prove the existence of extraordinary circumstances to justify . . . failure to raise the issue." *See Stanley*, 76 Hawai'i at 451, 879 P.2d at 556 (holding that where defendant failed to raise the issue of insufficient evidence to support the attempted manslaughter conviction on appeal, failed to present any facts to rebut the presumption that the failure to raise that issue was made knowingly, and failed to prove existence of extraordinary circumstances to justify his failure to raise the issue, he waived that issue for the purposes of a Rule 40 petition).

■ We conclude the court erred in determining that Fragiao knowingly and understandingly waived the conflict claim because he "could have" raised the conflict issue. Before trial, Fragiao was informed by the Corporation Counsel's office that there was a conflict of interest in it representing him in the civil cases. The record does not indicate, however, that Fragiao knew or was informed that payment of his attorney's fees for the criminal case might ostensibly raise a separate and distinct conflict issue. Indeed in his petition he claims not to have been informed of the issue until new appellate counsel was appointed. Moreover, because Fragiao was represented by Ball, there was no realistic opportunity for Ball's supposed conflict of interest to be raised before or during trial. *See Tachibana*, 79 Hawai'i at 232, 900 P.2d at 1299 (holding that where trial and appellate counsel are the same, no realistic opportunity exists for a defendant to raise the issue of whether that attorney usurped defendant's right to testify, and there is no Rule 40 waiver); *Briones v. State*, 74 Haw. 442, 459, 848 P.2d 966, 968–69 (1993) (holding that where petitioner has been represented by the same counsel both at trial and on direct appeal, no waiver of the issue of trial counsel's performance occurs because no realistic opportunity existed to raise the issue on direct appeal); *Matsuo v. State*, 70 Haw. 573, 577, 778 P.2d 332, 334 (1989) (holding that in a proceeding for post-conviction relief, where there has been no realistic opportunity for a defendant to raise an ineffective assistance of counsel claim, this issue is not waived under Rule 40(a)(3), and the defendant is entitled to an opportunity to be heard on the ineffective assistance of counsel claim). Thus, we do not discern a waiver from the absence of a conflict objection prior to or during Ball's representation.

■ We also cannot concur with the ICA that the claim was waived because DeLima failed to "raise this issue in the [direct] appeal" or should have asked the appellate court "to defer the issue." 95 Hawai'i at 56–57, 18 P.3d at 918–19. DeLima did substantially do that. He raised the conflict issue in pleadings filed in Fragiao's direct appeal, S.Ct. No. 20454, albeit not as a point in his opening brief, but by his motion for remand. This court denied remand for that purpose, effectively requiring Fragiao to file a Rule 40 proceeding as to the conflict claim rather than deferring it for subsequent consideration as part of his direct appeal.[16] *Cf. Silva*, 75 Haw. at 439, 864 P.2d at 592–93 (holding that where the record on appeal is insufficient to demonstrate ineffective assistance of counsel claim, the appellate court may affirm defendant's conviction without prejudice to a subsequent Rule 40 petition on that claim). Under such circumstances, it cannot fairly be concluded that Fragiao knowingly and under-

---

16. *See supra* note 11.

standingly waived the conflict issue in his direct appeal.

■ Finally, it cannot be inferred simply from the ICA's SDO affirmance, as the court did, that the ICA had "ruled upon" or that Fragiao "waived" the conflict issue in S.Ct. No. 20484. The SDO only affirmed the judgment of conviction. As a result of this court's order, Fragiao was precluded from raising the conflict issue in the direct appeal considered by the ICA and, thus, a decision on that issue could not have been encompassed by the ICA's summary affirmance.

In light of the unsettled question of whether a third-party payor arrangement of the kind in this case would *ipso facto* result in a ruling of ineffective assistance of counsel, we cannot say that Fragiao's claim was "patently frivolous." *See* HRPP Rule 40(f); *Tomomitsu v. State*, 93 Hawai'i 22, 23, 995 P.2d 323, 324 (App.2000) (affirming the circuit court's denial of the Rule 40 petition without a hearing because the petition was "patently frivolous and without a trace of support either in the record or from other evidence submitted by [petitioner]"); *Carvalho v. State*, 81 Hawai'i 185, 192, 914 P.2d 1378, 1385 (App.1996) (holding that petitioner's claim that his trial counsel was ineffective for not calling a particular witness was not "patently frivolous" or "without a trace of support" in the record or evidence); *Turner*, 79 Hawai'i at 120, 899 P.2d at 403 (stating that "the court may deny a hearing if the petitioner's claim is patently frivolous and is without trace of support either in the record or from other evidence submitted by the petitioner").

However, the court was not required to conduct a hearing on the conflict issue unless "the petition allege[d] facts that if proven would entitle the petitioner to relief." HRPP Rule 40(f). We conclude as a matter of law, for the reasons stated below, that even if proven, the facts in the record as recounted above would not have entitled Fragiao to relief. Consequently, the court's ultimate disposition of this issue was correct, not for the reasons in its decision, but on the premises we discuss *infra*.

## V.

■ The right to be represented by counsel free of conflicts of interest inheres in the right to counsel guaranteed by the federal constitution, U.S. Const., amend. VI; *Wood v. Georgia*, 450 U.S. 261, 271, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981), and our state constitution. Haw. Const., art. I, § 14; *State v. Pitt*, 77 Hawai'i 374, 884 P.2d 1150 (App. 1994). Like the federal courts, we do not require that a showing of "actual prejudice" be made where conflict of interest is the basis for an ineffective assistance claim. *Richie*, 88 Hawai'i at 42, 960 P.2d at 1250. Under the federal standard, "prejudice is *presumed*," *id.* at 42–43, 960 P.2d at 1250–51 (emphasis added) (citing *Strickland v. Washington*, 466 U.S. 668, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674, *reh'g denied*, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984), where the defendant demonstrates that his or her attorney actively represented conflicting interests and that " 'an actual conflict of interest adversely affected his or her lawyer's performance.' " *Id.* at 44, 960 P.2d at 1252 (quoting *Strickland*, 466 U.S. at 692, 104 S.Ct. 2052).

In *Richie*, this court held that to establish defense counsel's representation was ineffective under the Hawai'i Constitution, the petitioner must prove: "(1) [a] relationship giving rise to a conflict of interest existed between defense counsel and [petitioner]; *and* (2) either the relationship adversely affected defense counsel's performance, *or* [petitioner] did not consent to the relationship." *Id.* (emphases added). With regard to the first prong of the test, *Richie* instructs that "[e]xamples of a relationship giving rise to a conflict include joint representation of two or more co-defendants and concurrent representation of both the defendant and either the State of Hawai'i or a prosecution witness." *Id.* With regard to the second prong, "[a]ny demonstrable adverse effect on counsel's performance is sufficient; actual prejudice is not required" and "consent by the client should be given after full consultation." *Id.*

As applied to this case, the first prong of the *Richie* test requires Fragiao to prove that his relationship with Ball gave rise to a

18

conflict of interest. The conflict argued in the instant case is unlike the examples—joint and concurrent representation—referred to in *Richie*. To determine whether a relationship giving rise to a conflict of interest existed, we turn to the HRPC for guidance. *See id.* at 43, 960 P.2d at 1251. Satisfaction of the first prong of the *Richie* test depends on whether the relevant HRPC provisions would prohibit Ball from representing Fragiao. We conclude that they would not.

## VI.

Before embarking on a discussion of HRPC Rules 1.7(b) and 1.8(f), we observe preliminarily that Fragiao does not challenge the procurement process per se, but contends that the County should have permitted Fragiao "to select his own defense counsel" from the "list of qualified ... providers." However, we do not believe the County was required to allow Fragiao to choose from the list of qualified attorneys, nor for the reasons stated in Part VII, *infra*, do we consider the County's choice of Ball as creating a conflict of interest.

■■ In construing statutes, " 'where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning.' " *State v. Kalama*, 94 Hawai'i 60, 64, 8 P.3d 1224, 1228 (2000) (quoting *Citizens for Protection of North Kohala Coastline v. County of Hawai'i*, 91 Hawai'i 94, 107, 979 P.2d 1120, 1133 (1999) (internal quotation marks and citations omitted)). On its face, HRS § 52D–8 provides that the relevant County "employ[s] and pa[ys]" the attorney representing the officer in criminal proceedings. Reasonably incident to the vesting of such power in the County must be the collateral one of selecting the attorney the County employs and pays. Nothing in the statute delegates the power to select counsel to the officer involved. The County is not precluded under the statute from agreeing to counsel preferred by the officer, subject to any overriding procurement requirements or law. However, such agreement is not mandated in the absence of language requiring it. The legislative history of HRS § 52D–8 confirms that the County and not the police officer selects the attorney.

*See* Hse. Stand. Comm. Rep. No. 376 on H.B. 247, in 1941 Senate Journal, at 882 (stating that "[i]n case of criminal prosecution of police officers, *the county or city and county* by whom they are employed *shall supply legal representation* other than by the city and county or county attorney") (emphases added); Sen. Stand. Comm. Rep. No. 376 on H.B. 247, in 1941 Senate Journal, at 861 (stating that "a police officer ... shall be represented in the criminal proceeding by *an attorney employed and paid by the Board of Supervisors* for such service") (emphasis added).

## VII.

■ HRPC Rules 1.7(b) and 1.8(f) are applicable in situations where someone other than the client pays the lawyer's fees on the client's behalf. Having determined there was a conflict of interest, the ICA concluded that "[n]othing suggests that Fragiao ... satisfied the 'client consents after consultation' requirement of HRPC Rules 1 .7(b)(2) and 1.8(f)(1)" which would apply. 95 Hawai'i at 59–60, 18 P.3d at 921–22. In construing the HRPC, we apply the rule of reason because "[t]he [HRPC] are rules of reason" and "should be interpreted with reference to the purposes of legal representation and of the law itself." HRPC Scope 1. *See Zimmermann v. Board of Professional Responsibility*, 764 S.W.2d 757, 760 (Tenn.) ("In applying the Rules of Professional Responsibility, there ... must be a rule of reason applicable to their interpretation."), *cert. denied*, 490 U.S. 1107, 109 S.Ct. 3160, 104 L.Ed.2d 1023 (1989). Under our analyses, Rules 1.7(b)(2) and 1.8(f)(1) do not prohibit Ball's representation; further, we believe the purposes and policies underlying the rules were fully satisfied or substantially met in this case.

### A.

Subsection (b) of Rule 1.7, entitled "Conflict of Interest: General Rule," provides:

A lawyer shall not represent a client *if the representation of that client may be materially limited by the lawyer's responsibilities* to another client or *to a third*

*person,* or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation.

(Emphases added.)

Comment 4 to Rule 1.7, regarding "Loyalty to a Client," instructs:

Loyalty to a client is also impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client. Paragraph (b) addresses such situations. A possible conflict does not itself preclude the representation. The critical questions are the likelihood that a conflict will eventuate and, if it does, *whether it will materially interfere with the lawyer's independent professional judgment* in considering alternatives or forecloses courses of action that reasonably should be pursued on behalf of the client. Consideration should be given to whether the client wishes to accommodate the other interest involved.

(Emphasis added.)

Comment 10 to Rule 1.7, relating to the "Interest of Person Paying for a Lawyer's Service," advises:

*A lawyer may be paid from a source other than the client, if the client is informed of that fact and consents and the arrangement does not compromise the lawyer's duty of loyalty to the client.* See

Rule 1.8(f). For example, when an insurer and its insured have conflicting interests in a matter arising from a liability insurance agreement, and the insurer is required to provide special counsel for the insured, the arrangement should assure the special counsel's professional independence.

(Emphasis added.)

The foregoing comments to Rule 1.7(b) presage the validity of the relationship among Fragiao, Ball, and the County. Client consent under Rule 1.7(b)(2) is only required if "the representation of that client may be materially limited by the lawyer's responsibilities ... to a third person." *Cf. Finley,* 90 Hawai'i at 32, 975 P.2d at 1152 ("The HRPC do not allow an attorney to represent a client if this representation will be materially limited by his or her responsibilities to another client or a third person.").[17] First, there was no material limitation on Ball's representation of Fragiao. Pursuant to the arrangement, no responsibilities were owed to the County by Ball that materially limited his representation of Fragiao. The County clearly was not a client[18] of Ball's. *Cf. id.* at 32–33, 975 P.2d at 1152–53 ("If both the insured and the insurer were clients of the attorney and a conflict existed, such that each desired a different outcome to the litigation, it would be impossible for the attorney to adequately represent the interests of both, and the requirements of HRPC Rule 1.7(b)(1) could not be met."). The agreement explicitly directed that Ball was to act in the capacity of an independent contractor, not as an employee of the County. More importantly, the terms of the agreement did not

**17.** We concur with the ICA that *Richie* is controlling authority where the question of ineffective assistance of counsel is premised on a conflict of interest claim. But *Finley* is instructive insofar as it construes, in a general sense, the import of HRPC Rules 1.7(b) and 1.8(f), and we refer to it herein for that purpose.

**18.** The HRPC does not define the term "client." However, the commentary to Rule 1.7 refers to the "Scope" section for a determination of "whether a client-lawyer relationship exists or having once been established, is continuing[.]" That section provides in pertinent part that

for purposes of determining the lawyer's authority and responsibility, principles of substantive law external to these rules determine

whether a client-lawyer relationship exists. Most of the duties flowing from the client-lawyer relationship attach only after the client has requested the lawyer to render legal services and the lawyer has agreed to do so. "Client" is defined as "[a] person [or entity that] employs or retains an attorney ... to appear for him[, her, or it] in courts, advise, assist, and defend him[, her, or it] in legal proceedings, and to act for him[, her, or it] in any legal business." *Black's Law Dictionary* 254 (6th ed.1990). Ball's status as an "independent contractor" for the purpose of providing legal services to Fragiao in three specific court cases plainly did not establish an attorney-client relationship between him and the County.

permit the County to control Ball's representation of Fragiao. Hence, it is evident the arrangement placed no limitations upon Ball in his pursuit of Fragiao's defense.

Second, Ball's loyalty to Fragiao was not impaired by the third-party payor arrangement. That the County paid his fees did not interfere with Ball's ability to consider alternatives or "foreclose courses of action that reasonably should [have been] pursued [on Fragiao's] behalf." HRPC 1.7 cmt. 4. Ball did not have to obtain the County's permission before incurring expenses or rendering services. The agreement directed that the County would reimburse Ball upon receipt of invoices documenting his expenditures and pay his fees on an hourly basis. Significantly, the County did not reserve the right to deny payment for services it deemed unnecessary.

Related to this factor is Fragiao's contention that the prospect of future employment with the County affected Ball's representation. Fragiao posits that Ball's response to the notice soliciting legal services "evidenc[ed Ball's] own interest in securing further work from the County." Based as it is on speculation, this contention is not a "fact" that we are obligated to accept. Additionally, Ball's ability to obtain future employment with the County is presumably governed and, thus, limited by a standard statutory hiring procedure open to all. Under the procurement scheme applicable at the time, Ball responded to the County's notice, was selected by the screening committee as one of three qualified candidates, and received the endorsement of the purchasing agency head. *See* HRS § 103D–304. Such circumstances would not reasonably give rise to a presumption that Ball's ethical obligations to his client would be usurped by future employment prospects. *Cf. Delmonte v. State Farm Fire & Cas. Co.*, 90 Hawai'i 39, 53, 975 P.2d 1159, 1173 (1999) (stating that "a contractual provision that conflicts with an attorney's representation in accord with the [HRPC] must yield to the requirements of professional ethics") (citing *Finley*, 90 Hawai'i at 34, 975 P.2d at 1154)).

Finally, the tripartite relationship among the County, Ball, and Fragiao is analogous to the relationship among an insurer, defense counsel, and insured, cited with approval in Comment 10 to HRPC Rule 1.7 and discussed in *Finley*. Comment 10 suggests that the relationship created by the agreement here was permissible as long as the arrangement assured counsel's professional independence. *Cf. Finley*, 90 Hawai'i at 33, 975 P.2d at 1153 ("Comment 10 expressly allows the representation of an insured by special (i.e., independent) counsel paid for by the insurer, with the caveat that the arrangement must 'assure the special counsel's professional independence.' "). Because the arrangement did preserve Ball's professional independence, as discussed *supra*, the relationship did not run afoul of HRPC Rule 1.7.[19]

In sum, Rule 1.7 demands a client's consent following consultation only in the event counsel's representation was "materially limited" by responsibilities, in this case, to a third party. In the absence of such limits, as is the situation here, Rule 1.7 is simply not pertinent. *Cf. Finley*, 90 Hawai'i at 32–33, 975 P.2d at 1152–53. Thus, Ball's representation of Fragiao was not prohibited by HRPC Rule 1.7(b).

### B.

■ Moreover, we believe the circumstances here do not reasonably implicate the consent requirement in Rule 1.7. Logically, the requirement in Rule 1.7(b)(2) that a client consent after consultation must rest on the assumption that the client is not the moving force behind the attorney's employment and payment by a third party. This is readily apparent from the language of comment 10, which advises that if the client "is informed [of third party payment] *and* consents" (emphasis added), the arrangement is not ethically prohibited, assuming no compromise of "loyalty to the client." Hence, a Rule 1.7(b)(2) consent includes a consent to the fact that counsel is "paid from a source other than the client's."

---

**19.** We believe the officer involved should be informed of the terms of the agreement and, thus, that a copy of the agreement entered into between the County and special counsel must, upon execution, be provided to the officer for whom representation has been obtained.

Here, Fragiao acknowledges he applied to the County for counsel to be obtained on his behalf under HRS § 52D–8. He could only have done so knowing, as provided by the statute, that unlike his prior privately retained attorney, the attorney selected, in the words of HRS § 52D–8, would "be employed and paid by the county." Therefore, where the client himself or herself initiated hiring and payment of the attorney by a third party, application of the consent requirement regarding such employment and payment would be plainly superfluous and unreasonable.

## VIII.

### A.

The same analysis applicable to Rule 1.7(b)(2) is relevant to Rule 1.8(f). Rule 1.8(f) provides:

> A lawyer shall not accept compensation for representing a client from one other than the client unless:
>
> (1) the client consents after consultation;
>
> (2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and
>
> (3) information relating to representation of a client is protected as required by Rule 1.6.[ 20]

Comment 4 to Rule 1.8 states in relevant part:

> Rule 1.8(f) requires disclosure of the fact that the lawyer's services are being paid for by a third party. Such an arrangement must also conform to the requirements of Rule 1.6 and 1.7 concerning conflict of interest.

Comment 4 indicates the purpose of Rule 1.8(f) is to mandate "*disclosure* of the fact that the lawyer's services are being paid for by a third party." (Emphasis added.) Applying the rule of reason, *see* Scope 1 of HRPC, where the client has *requested* payment of his or her attorney's fees by a third

party, compelling disclosure of that fact to the client by counsel retained as a result of that request, would be as meaningless as the attendant consent demanded. By initiating third party hiring and payment, Fragiao obviated any need for disclosure and, hence, his consent. As a result, Rule 1.8(f), like Rule 1.7(b)(2), is not applicable to this case.

### B.

Nevertheless, we observe further that the three conditions set forth by Rule 1.8(f)(1)–(3) were substantially fulfilled in the instant case. As to the Rule 1.8(f)(1) consent after consultation requirement, Comment 4 commands that the client must be apprised of the "third party" payment. Because, as we have said, Fragiao specifically requested counsel pursuant to HRS § 52D–8, it is obvious he was aware of the fact and desired that a third party would hire the attorney and pay his attorney's fees. Although Fragiao had expressed a desire that Green represent him, he elected to invoke a statute that plainly indicated that it would be the County that would hire the counsel designated for that purpose.

For the reasons stated in the discussion of Rule 1.7(b) above, the arrangement between the County and Ball ensured, in connection with HRPC Rule 1.8(f)(2), that "there [would be] no interference with [Ball's] independence of professional judgement or with the client-lawyer relationship." Lastly, with respect to HRPC Rule 1.8(f)(3), there is no indication that Ball violated, or would likely have violated, the confidentiality requirement in Rule 1.6. The agreement for special counsel did not require Ball to update or discuss matters relating to Fragiao's criminal trial with the County. Ball was retained as an "independent contractor" to provide "professional legal services" and, thus, was personally subject to the HRPC and the obligations imposed thereunder to protect client confidences. *Cf. Finley*, 90 Hawai'i at 33, 975 P.2d at 1153 ("We require attorneys to follow the mandates of the HRPC."). Hence,

---

**20.** HRPC Rule 1.6, regarding Confidentiality of Information, provides in relevant part:

(a) A lawyer shall not reveal information relating to representation of a client unless the client

consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation. . . .

HRPC Rule 1.8(f) did not prohibit Ball from representing Fragiao.

### IX.

For the foregoing reasons, Fragiao failed to establish that his relationship with Ball gave rise to a conflict of interest. Because Fragiao failed to prove the first prong of *Richie* 's two-pronged test, further inquiry is unnecessary.[21] Hence, the orders of the court denying Fragiao's petition and his motion for reconsideration are affirmed, but on the grounds set forth herein.

**21.** Our resolution of the conflict question subsumes Fragiao's claim that the selection of Ball "diminished" his "due process of law" "property right or entitlement" under HRS §§ 52D–8 and 52D–9.