MARIO R. RAMIL, Receiver of Financial Security Insurance Company, Limited, Plaintiff-Appellee, *v.* ROBERT J. KELLER, CARYL W. KELLER, RAY KELLER, UNITED INDEPENDENT INSURANCE AGENCIES, a Hawaii corporation, IMPERIAL HOLDINGS, INC., a Hawaii corporation, SOUTH PARK LAND AND LIVESTOCK COMPANY, INC., a Colorado corporation, and COMPUTER SYSTEMS GROUP, INC., a Hawaii corporation, Defendants-Appellants, and JOHN DOES 1-50, JANE DOES 1-50, DOE CORPORATIONS 1-50, DOE PARTNERSHIPS 1-50, and DOE ENTITIES 1-50, Defendants

NO. 10790

(CIVIL NO. 84-1117)

SEPTEMBER 26, 1986

LUM, C.J., NAKAMURA, PADGETT, HAYASHI,
AND WAKATSUKI, JJ.

## OPINION OF THE COURT BY NAKAMURA, J.

The ultimate question in this appeal is whether the Circuit Court of the First Circuit abused its discretionary powers when it imposed litigation-ending sanctions for noncompliance with an order to render an accounting and to deposit funds and assets. Defendants-appellants argue the entry of judgments against them breached due process as well as their privilege against self-incrimination; they further maintain the circuit court's findings of fact are unsupported by evidence and the court erred in ordering an accounting when no showing of irreparable injury had been made. Concluding from a careful review of the voluminous record that these contentions lack merit and there was no abuse of discretion, we affirm the award of judgments to the plaintiff-appellee, the Insurance Commissioner of the State of Hawaii.

I.

The defendants-appellants are Robert J. Keller (Keller), two other

members of his family, United Independent Insurance Agencies (UIIA), South Park Land and Livestock Company, Inc. (SPLL), and Computer Systems Group, Inc. (CSG), corporations controlled by Keller. Until the Insurance Commissioner was appointed to act as its receiver by the Circuit Court of the First Circuit in related proceedings, Keller also controlled Financial Security Insurance Company, Ltd. (FSIC), a Hawaii corporation.

During the summer of 1984, the Insurance Commissioner's office was deluged with complaints from policyholders and others that FSIC was not paying claims and committing other questionable practices. The commissioner therefore engaged a certified examiner of insurance companies to conduct an investigation. The examiner uncovered evidence that FSIC was not paying claims in timely fashion, Keller and several corporations under Keller's control had not complied with earlier agreements with the commissioner to transfer assets to FSIC, and Keller, members of his family, and other associates had misappropriated and misapplied funds belonging to FSIC.

Invoking a power granted by Hawaii Revised Statutes (HRS) § 431-653, the Insurance Commissioner instituted proceedings in the Circuit Court of the First Circuit to have himself named as the company's receiver. The circuit court initially appointed him temporary receiver and directed him to proceed with efforts to rehabilitate the insurance company. However, the commissioner soon learned FSIC was in deeper financial trouble than first thought and sought court permission to liquidate rather than rehabilitate the ailing insurance company.[1] Orders

---

[1] The Insurance Commissioner is empowered to seek a court order directing him to rehabilitate a domestic insurance company. In pertinent part, HRS § 431-653 (1976) reads:

> Grounds for rehabilitation. The insurance commissioner may apply, to the circuit court of the first judicial circuit of this State, for an order directing him to rehabilitate a domestic insurer upon one or more of the following grounds, that the insurer:
>
> (1) Is insolvent; or,
>
> . . . . .
>
> (5) Is found, after examination, to be in such condition that its further transaction of business will be hazardous to its policyholders, or to its creditors, or to its members, subscribers, or stockholders, or to the public[.]

If he finds that efforts to rehabilitate the insurer would be fruitless, he is empowered to seek an order of liquidation pursuant to HRS § 431-654 (1976), which in relevant part provides:

appointing him receiver and declaring that the company was insolvent at the inception of proceedings were entered by the circuit court during the first week of October.

The Insurance Commissioner instituted the instant suit against Keller, two other members of his family, and several corporate entities controlled by him on October 12, 1984, averring, *inter alia,* that the defendants had misappropriated and misapplied FSIC's funds and assets "in fraud of (and, in the case of the defendants Keller, in breach of their fiduciary duties, as officers, directors, or control persons, to) FSIC, its policyholders, and its creditors." The commissioner sought: (1) the payment of a promissory note in the principal sum of $8,000,000 that Keller had executed in favor of FSIC, (2) the payment of other debts totalling more than $5,000,000 allegedly owed FSIC by Keller and the corporate defendants, (3) the assignment to FSIC of trust deeds having a value of $3,245,876, (4) damages in excess of $8,000,000 allegedly resulting from the misappropriation and misapplication of FSIC's funds and assets, (5) the imposition of constructive trusts upon the assets of the defendants and the transfer of said assets to FSIC, and (6) damages resulting from the unfair and deceptive trade practices carried on by the defendants.[2]

Concomitantly, the receiver sought a temporary restraining order and a preliminary injunction to prevent a dissipation of the misappropriated funds and assets. Since affidavits submitted by the receiver indicated that substantial sums belonging to FSIC had been expended to purchase automobiles and other expensive items for the use of the defendants, a restraining order was issued *ex parte* by the circuit court. The court, however, conducted an extended hearing on the motion for preliminary injunction. Satisfied from the proof presented by the receiver "that the defendants misappropriated substantial sums of

---

Order of rehabilitation; termination. (a) An order to rehabilitate a domestic insurer shall direct the insurance commissioner forthwith to take possession of the property of the insurer and to conduct the business thereof, and to take such steps toward removal of the causes and conditions which have made rehabilitation necessary as the court may direct.

(b) If at any time the commissioner deems that further efforts to rehabilitate the insurer would be useless, he may apply to the court for an order of liquidation.

[2]In an amended complaint, the commissioner sought payment of debts owed FSIC by the Kellers and the corporate defendants in an amount exceeding $16 million and damages resulting from misappropriation and misapplication in excess of $7 million.

money and other assets from FSIC for their own personal purposes in violation of their fiduciary duties to FSIC,"[3] the court granted the motion. A preliminary injunction was entered on November 26, 1984; the defendants "and any person in active concert or participation with any of them, [were] enjoined . . . from conveying, transferring or encumbering any assets held in the . . . names of the defendants" that were traceable to the misappropriated sums and assets. But the injunction did not cover expenditures to meet the ordinary and necessary living expenses of the non-corporate defendants from funds not flowing from such source.

Soon thereafter, the receiver learned that Keller and others acting in concert with him were attempting to ship several automobiles purchased with misappropriated money to the mainland. The receiver moved for a supplemental injunction expressly prohibiting the transfer or removal from Hawaii of any property standing in the names of the defendants. Defendants' counsel, who has since been replaced, acknowledged their conduct was less than prudent, and a supplemental injunction issued.

But the court orders did not bring a halt to attempts by the defendants to put assets beyond the reach of the receiver or the court. A few weeks later, Keller, through new counsel, directed the First Hawaiian Bank to transmit $20,000 from his accounts to California. The receiver further learned that SPLL had breached the terms of the preliminary injunction, as well as the order of a bankruptcy court in California, with respect to the collection and disposition of moneys. Armed with this information, the receiver moved the circuit court on February 14, 1985 for an order directing the defendants "to account for the custody, disposition, identity, and location of all funds and other assets held in their names" from October 12, 1984, the date of the restraining order, and to deposit all of their funds and assets in Hawaii with the clerk of the court. The requested relief was granted on March 4, 1985 after briefing

---

[3]The relevant finding of the circuit court reads:

4. There is a substantial likelihood that plaintiff will prevail on the merits in this case. Having heard the evidence adduced at the hearing, there is no question in the Court's mind that the defendants misappropriated substantial sums of money and other assets from FSIC for their own personal purposes in violation of their fiduciary duties to FSIC, that the transactions complained of are not normal business transactions as contended by the defendants, but are completely lacking in bona fides, and that the defendants acted in bad faith in their course of dealing with FSIC.

and argument.

But no accounting in the form ordered by the court was provided by the corporate defendants, and no funds were deposited with the clerk of the court. The non-corporate defendants also disclosed nothing; they relied on the Fifth Amendment privilege against self-incrimination in refusing to submit an accounting as directed.

The receiver responded in turn with a motion for the entry of judgment in his favor. After hearing the motion, the circuit court ordered the defendants to

> show cause, if any they have, why the Court should not, pursuant to *Hawaii Rev. Stat.* § 603-21.9, strike the defendants' answer, affirmative defenses, and counterclaims, declare that all relevant and material allegations of the Plaintiff's First Amended Complaint are to be taken as true and established for all purposes, and, upon defendants' failure to show such cause, to thereafter enter judgment, pursuant to Rule 54(b) of the Hawaii Rules of Civil Procedure, against the defendants, and each of them, or under any other rules of court or substantive law or, as requested by plaintiff in plaintiff's motion filed May 3, 1985, because of defendants' failure to make disclosure of information, file an accounting, and otherwise comply with that certain Order Granting Motion For Accounting And To Require Defendants To Deposit Funds And Assets Subject To The Preliminary Injunction With The Court, filed on May 4, 1985, and any other orders of the Court which have not been abated.

The corporate and non-corporate defendants filed separate returns to the order to show cause; the tardy response of the corporate defendants consisted of a summary of cash receipts and disbursements, and the non-corporate defendants reiterated their claim that a disclosure of their assets and the transactions following the entry of the restraining order might incriminate them.

After reviewing the evidence presented by the parties at the show-cause hearing and the earlier hearing on the motion for preliminary injunction, the circuit court entered extensive and detailed findings of fact. The court found, *inter alia,* that "[t]he actions taken by the defendants violate[d the] injunctions"; it further found the violations "would permit the defendants to conceal or dispose of the monies and other assets the equitable ownership of which is the subject of this action and destroy the Court's ability to grant effective relief." In the court's view the accounting submitted on behalf of SPLL showed transfers in viola-

tion of its orders, that filed on behalf of another Keller corporation failed to account for certain property and income, and that filed on behalf of the other corporate defendants was "woefully inadequate," "lack[ing in] credibility," and did not demonstrate "good faith compliance" with the order for accounting. And it decided the non-corporate defendants "produced no evidence that they [were] confronted by any substantial and real hazard of prosecution unrelated to the defendants' own conduct in this litigation."

Since "the misappropriation of FSIC's assets, the retention of property in violation of fiduciary duties, and a constructive trust upon the property in the defendants' names [were] at issue," the circuit court concluded "the identity and location of such property [was] central, if not essential, to the rightful decision of the cause and . . . vital to the adjudicative process." It decided, after "balancing the equities" and "considering the defendants' bad faith with respect to the Court's injunctions and orders," that "it [was] just and equitable to strike" the substantive portions of the defendants' pleadings, declare the relevant and material allegations of the plaintiff's complaint as having been established, and enter judgment against the defendants. The circuit court therefore entered judgment in the sum of $8,000,000 against Keller and SPLL on Count I of the complaint and in the combined sum of $5,308,070.78 against Keller, SPLL, and UIIA on Counts II, III, and X. And a constructive trust and an equitable lien in favor of the plaintiff on one-half of SPLL's right, title, and interest in certain Colorado real property were imposed.

The circuit court certified the judgments on the foregoing counts as final judgments pursuant to Rule 54(b) of the Hawaii Rules of Civil Procedure (HRCP), and the defendants perfected a timely appeal to this court. They argue the judgments must be vacated because:

1. The Findings of Fact Are Not Supported By The Evidence[;]

2. The Judgments Violate Defendants' Due Process Rights Because They Were Entered As A Sanction For Alleged Intent[;]

3. The Judgments Against Defendant Keller Must Be Vacated Because They Were Rendered As A Sanction For Keller's Proper Invocation Of His Fifth Amendment Privilege Against Self-Incrimination[;]

4. The Judgments Must Be Vacated Because They Were Based Upon Orders Which Called For The Unconstitutional Deprivation Of The Defendants' Property[; and]

5. There Was No Showing Of Irreparable Injury To Support The Order Granting Motion For Accounting[.]

II.

We begin our analysis of the issues by considering the claim that the defendants were denied due process by the award of judgments in favor of the receiver.[4]

A.

Citing *Hovey v. Elliott,* 167 U.S. 409 (1897), the defendants maintain "that judgments entered as a sanction for contempt are jurisdictionally infirm and [constitute] a denial of due process." The question in *Hovey* was "whether a court possessing plenary power to punish for contempt, unlimited by statute, has the right to summon a defendant to answer, and then after obtaining jurisdiction by the summons, refuse to allow the party summoned to answer or strike his answer from the files, suppress the testimony in his favor, and condemn him without consideration thereof and without a hearing, on the theory that he has been guilty of a contempt of court." *Id.* at 413. In the Supreme Court's view, "[t]he mere statement of this proposition would seem, in reason and conscience, to render imperative a negative answer." *Id.* That the judgments against Keller, his associates, and corporations controlled by him ought to be vacated if the defendants were "deni[ed] . . . all right to defend as a mere punishment" is evident. *Hammond Packing Co. v. Arkansas,* 212 U.S. 322, 350 (1909). But like *Hammond,* "[t]his case presents a failure by the defendant[s] to produce . . . material evidence in [their] possession and a resulting striking out of an answer and a default." *Id.* "There the [Supreme] Court held that it did not violate due process for a state court to strike the answer and render a default judgment against a defendant who failed to comply with a pretrial discovery order." *Insurance Corp. of Ireland v. Compagnie Des Bauxites,* 456 U.S. 694, 705 (1982). Thus, Hawaii Rules of Civil Procedure (HRCP) 37(b)(2), like Rule 37(b)(2) of the Federal Rules of Civil

---

[4]The defendants-appellants' second and fourth arguments allege due process violations.

Procedure, allows a trial court to strike an answer and render a default judgment against a party who has disobeyed an order to provide or permit discovery.[5] The rule "embodies the standard established in *Hammond . .* for the due process limits on such rules." *Insurance Corp. of Ireland v. Compagnie Des Bauxites,* 456 U.S. at 705 (footnote omitted). "And the State [also] accords *due* process when it terminates a claim for failure to comply with a reasonable procedural or evidentiary rule." *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 437 (1982) (citations omitted) (emphasis in original); *see* HRCP 41(b).[6]

Defendants argue the award of judgments against them was punitive and not for failure to comply with a rule of procedure or evidence. Strictly speaking, we are not dealing with a failure to comply with a command to abide by one of the Hawaii Rules of Civil Procedure or the Hawaii Rules of Evidence. Still, we think the due process standard embodied in *Hammond Packing Co. v. Arkansas, supra,* was met in this case and the circuit court acted within its discretionary authority. For the court's concerns in entering judgment against the defendants went beyond mere punishment, and there was no denial of a right to defend.

### B.

To begin with, "[t]he business [in which the defendants were

---

[5]HRCP Rule 37(b) provides in relevant part:
  (b) Failure to Comply with Order.

.

  (2) *Sanctions by Court in Which Action is Pending.* If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

.

  (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party[.]

[6]HRCP Rule 41(b) provides in relevant part:
  (b) Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him.

engaged] is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. Upon the insurer, the insured, and their representatives rests the duty of preserving inviolate the integrity of insurance." HRS § 431-2; *see also* 19 J. Appleman, *Insurance Law and Practice* § 10393 (1982). The Insurance Commissioner, who is charged with enforcing the public policy to prevent abuses by insurers, uncovered proof that the defendants were not actuated by good faith, did not abstain from deception, and failed to practice honesty and equity. *See supra* note 3. The circuit court was convinced when the evidence was presented in the lengthy hearing on the preliminary injunction that Keller and his associates "misappropriated substantial sums of money and other assets from FSIC for their own personal purposes in violation of their fiduciary duties" and "acted in bad faith in their course of dealing with FSIC." *Id.* Thus, the court enjoined the defendants and persons acting in concert with them "from conveying, transferring or encumbering any assets held in the joint or separate name or names of the defendants, and specifically from conveying, transferring, or encumbering any real or tangible personal property or otherwise disposing of or affecting . . . their interest in any chose in action" pending the outcome of the litigation. That an injunction was warranted under the circumstances is beyond cavil.

Granted, preliminary injunction hearings are not meant to determine the merits of a plaintiff's cause. *Rogers v. Hill,* 289 U.S. 582, 587 (1933). Still, the likelihood of the plaintiff's prevailing on the merits is an essential factor whenever temporary injunctive relief is sought. *Life of the Land v. Ariyoshi,* 59 Haw. 156, 158, 577 P.2d 1116, 1118 (1978). Here, after hearing proof for nine days of malefaction on the part of Keller and his associates, the circuit court agreed with the receiver that there was "a substantial likelihood" he would ultimately prevail. Indeed, "there [was] no question in the Court's mind that the defendants misappropriated substantial sums of money and other assets from FSIC for their own personal purposes . . . ." *See supra* note 3. The court then acted to maintain the status quo so meaningful final relief would not be precluded. *Life of the Land v. Ariyoshi, supra.*

The court's decision to compel the defendants to account thereafter for their actions with respect to assets standing in their names was justified too. For the order issued only when it was evident that the defendants, unless deterred, would set to naught the court's efforts to

preserve the assets for eventual equitable distribution. Moreover, they were afforded a hearing before the entry of the Order Directing an Accounting.

When the defendants failed to comply with the order to submit an account of post-restraint transactions involving the assets in question, the receiver moved for the imposition of litigation-ending sanctions. The recalcitrant parties were given due notice that the court was contemplating such action and afforded an opportunity to counter the evidence of disobedience offered by the receiver. They did not—that the compliance efforts of the corporate defendants lacked credibility was confirmed, and the non-corporate defendants did not demonstrate that they faced a possibility of criminal prosecution unrelated to their conduct subsequent to the order restraining the transfer or removal of assets subject to the imposition of a trust for the use and benefit of the receiver and those on whose behalf he acted. The imposition of litigation-ending sanctions thereafter can hardly be likened to the situation in *Hovey v. Elliott, supra,* where "due process of law was denied by the refusal to hear." *Hammond Packing Co. v. Arkansas,* 212 U.S. at 351.

The circuit court did not "suppress the testimony in [the defendants'] favor" or "condemn [them] without consideration thereof and without a hearing." *Hovey v. Elliott,* 167 U.S. at 413. It awarded the receiver judgment on counts I, II, III, and X after hearing what Keller and his associates had to say in defense of the allegations in the complaint, after the presentation of clear and convincing proof that they "misappropriated substantial sums of money and other assets from FSIC for their own personal purposes in violation of their fiduciary duties to FSIC," and after they could not justify their non-compliance with the court's order to submit an account of transactions it deemed "central, if not essential, to the rightful decision of the cause."

The defendants, however, argue the circuit court lacked authority to award judgment because the contumacious conduct was unrelated to pre-trial discovery and therefore not subject to the sanctions authorized by HRCP 37(b)(2). But the legislature has empowered circuit courts

> [t]o make and award such judgments, decrees, orders, and mandates, issue such executions and other processes, and do such other acts and take such other steps as may be necessary to carry into full effect the powers which are or shall be given . . . by law or for the promotion of justice in matters pending before them.

HRS § 603-21.9(6). Furthermore, a court has inherent power to dismiss

lawsuits and default defendants, power "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R.,* 370 U.S. 626, 630-31 (1962) (footnote omitted).

We realize, of course, that "[t]he fundamental guarantee of due process is absolute" and judicial power may not be exercised in disregard of its strictures. *Hammond Packing Co. v. Arkansas,* 212 U.S. at 350. Undoubtedly, the entry of judgment as mere punishment denies due process. *Hovey v. Elliott,* 167 U.S. at 413. But as *Hammond* teaches us, a "presumption that the refusal to produce evidence material to the administration of due process [is] but an admission of the want of merit in the asserted defense" enforces rather than denies due process. 212 U.S. at 351. The award of judgments here advanced the receiver's suit to "preserv[e] inviolate the integrity of insurance," HRS § 431-2, and "prevent[ed] the part[ies] against whom sanctions [were] imposed from profiting by [their] own violation[s]." *Fields v. Stauffer Publications, Inc.,* 2 Kan. App. 2d 323, 328, 578 P.2d 1138, 1143 (1978) (citations omitted). It, then, was more than mere punishment.

## III.

We find no merit also in the contention that judgments were entered here as a sanction for Keller's proper invocation of his Fifth Amendment privilege against self-incrimination.

In *Malloy v. Hogan,* 378 U.S. 1, 8 (1964), the Supreme Court said "[t]he Fourteenth Amendment secures against state invasion the same privilege that the Fifth Amendment guarantees against federal infringement—the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence." Thus in *Kaneshiro v. Belisario,* 51 Haw. 649, 654, 466 P.2d 452, 455 (1970), we held "that in a civil proceeding the assertion of defendant's right against self-incrimination is protected by the state and federal constitutions and shall not be the subject of any comment or adverse inference by the opposing party." The Supreme Court, however, has since ruled "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the Amendment 'does not preclude the inference where the privilege is claimed by a *party to a civil cause.*' 8 J. Wigmore, Evidence 439 (McNaughton rev. 1961)." *Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976) (emphasis in original). We do not

reach the question of whether or not the state constitution precluded adverse inferences from the claim of privilege here, for there is nothing in the record manifesting that the information sought of Keller and his associates "might [have] incriminate[d them] in future criminal proceedings." *Lefkowitz v. Turley,* 414 U.S. 70, 77 (1973).

One is not exonerated from producing information necessary for the determination of a case "merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination." *Hoffman v. United States,* 341 U.S. 479, 486 (1951). "It is for the court to say whether his silence is justified, *Rogers v. United States,* 340 U.S. 367 (1951), and to require him to [respond] if 'it clearly appears to the court that he is mistaken.' *Temple v. Commonwealth,* 75 Va. 892, 899 (1881)." *Hoffman v. United States,* 341 U.S. at 486. The privilege was asserted here on the ground that the submission of an account of post-restraint transactions relating to the assets in question might demonstrate disobedience of injunctive orders and subject the defendants to criminal contempt proceedings. But as the court made clear, criminal sanctions were not what it had in mind; the defendants were told: "We're talking about the entry of judgment. We're far away from contempt." Given these circumstances, we perceive no basis to fault the court's finding that the "defendants . . . produced no evidence [of a] substantial and real hazard of prosecution unrelated to [their] own conduct in this litigation." Nor can we deem erroneous the exercise of discretion to award judgments against the defendants for not complying with the Order Directing An Accounting. If courts "had no power to compel obedience to reasonable and authorized orders, . . . the wheels of justice would be clogged [and] suitors [would] revel in defaults and contempt." *City of Mobile v. Wooley,* 278 Ala. 652, 655, 180 So. 2d 251, 254 (1965) (quoting *Albert Hass Lumber Co. v. Gibson,* 172 Ala. 111, 113, 54 So. 994, 994 (1911)).

IV.

Having concluded that the circuit court's award of judgments to the plaintiff did not breach the guarantee of due process or the privilege against self-incrimination, we turn to the remaining claims of error.

The claim that the findings of fact made by the circuit court are not supported by the record is utterly devoid of substance, and so is the claim that error was committed when the defendants were ordered to

submit accounts of post-restraint transactions. The findings are amply supported in all respects, and the record manifests more than good reason for ordering an accounting.

Thus, we conclude the circuit court did not err in its factual determinations and rulings on legal issues and did not abuse its discretionary powers. The award of judgments on Counts I, II, III, and X of the complaint and the imposition of a constructive trust and an equitable lien are affirmed, and the case is remanded for disposition of the remaining claims against the defendants.

*Thomas T. Watts* (*Kemper & Watts*, of counsel) for appellants.

*Don Jeffrey Gelber* (*Robert J. Faris* with him on the brief; *Gelber & Gelber*, of counsel), Special Deputy Attorneys General, for appellee.