**\*\*\* FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER \*\*\***

**Electronically Filed
Supreme Court
SCWC-17-0000666
30-NOV-2023
08:54 AM
Dkt. 23 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

KAWIKA FRANCO, Individually and as Personal Representative for
the Estate of TIARE FRANCO; PEACHES KONG and APPLES ELABAN, as
Next Friends of LOVELY FRANCO (Minor); TAUA GLEASON, as Next
Friend of KOLOMANA KONG KANIAUPIO GLEASON and KAULANA KONG
KANIAUPIO GLEASON (Minors); and CHERYL RUSSELL, as Next Friend
of JEANNE RUSSELL (Minor), Respondents/Plaintiffs-Appellants,

vs.

SABIO REINHARDT,
Petitioner/Defendant-Appellee,

and

JOSIAH OKUDARA,
Respondent/Defendant-Appellee.

SCWC-17-0000666

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-17-0000666; CASE NO. 2CC121000458)

NOVEMBER 30, 2023

RECKTENWALD, C.J., McKENNA, AND EDDINS, JJ.,
CIRCUIT JUDGE SOUZA AND CIRCUIT JUDGE KAWASHIMA,
ASSIGNED BY REASON OF VACANCIES

OPINION OF THE COURT BY EDDINS, J.

**I.**

In this wrongful death case, Tiare Franco's family (the Francos) appeal, again.  Last time they successfully appealed the Circuit Court of the Second Circuit's declaratory judgment action ruling that National Interstate Insurance Company (NIIC) had no duty to defend or indemnify Sabio Reinhardt.  The Francos allege Reinhardt negligently crashed a truck, killing passenger Tiare Franco.

The Intermediate Court of Appeals (ICA) vacated the declaratory judgment.  It concluded that there were "genuine issues of material fact regarding whether Reinhardt reasonably believed he was entitled to operate the Truck at the time of the fatal accident." Nat'l Interstate Ins. Co., Inc. v. Reinhardt, No. CAAP-14-0001066, 2017 WL 1210101, at *2 (Haw. App. March 31, 2017) (mem. op.).

However, *before* the ICA resolved the Franco's declaratory action appeal, the circuit court held a jury trial.  Neither Reinhardt nor defense counsel participated.  The Francos won.  The jury returned a multi-million dollar verdict in their favor.

After the ICA's decision, NIIC again retained counsel for Reinhardt.  It was the same attorney who had represented him during the three-year period preceding the circuit court's declaratory action ruling.  Per Hawai‘i Rules of Civil Procedure (HRCP) 60(b), counsel moved to set aside the jury's verdict.

2

The Francos opposed the motion. And they moved to disqualify Reinhardt's counsel. They said counsel had a conflict and violated the Hawai'i Rules of Professional Conduct (HRPC) by acting without Reinhardt's consent.

The trial court denied the Francos' motion to disqualify counsel. It granted Reinhardt's motion to set aside the jury verdict and judgment. The Francos appealed.

In a memorandum opinion, the ICA held that Reinhardt's counsel lacked authority to act as his lawyer. Since Reinhardt had not expressly consented to re-engage defense counsel, the lawyer lacked consent to represent him and advance his interests. The lawyer violated the Hawai'i Rules of Professional Conduct, the ICA ruled: "Retained Counsel did not have the authority or Reinhardt's consent to file motions on behalf of Reinhardt." Since the lawyer had no authority to file it, the ICA chose not to reach the merits of the HRCP Rule 60(b) motion. The ICA reinstated the jury's verdict and judgment.

We disagree with the ICA's view that counsel had no authority to act on Reinhardt's behalf. Reinhardt implicitly consented to the representation, did not invoke his right to refuse counsel, and there was no conflict that barred the representation. We hold that the circuit court correctly denied the Francos' motion to disqualify counsel. Counsel did not violate the HRPC by moving to set the judgment aside.

3

We also hold that the circuit court did not abuse its discretion by granting Reinhardt's motion to set aside.

We vacate the ICA's Judgment, affirm the circuit court's orders, and remand the case to the circuit court for proceedings consistent with this opinion.

**II.**

On June 20, 2011 Reinhardt allegedly crashed his girlfriend's 2005 Dodge Ram pickup. Front passenger Tiare Franco died. Her family sued Reinhardt for wrongful death.

NIIC, insurance carrier for the truck, retained counsel to defend Reinhardt. Separately, NIIC filed a declaratory action. NIIC claimed it had no duty to defend and indemnify Reinhardt under the policy. Then it moved for summary judgment. The circuit court granted NIIC's MSJ. The insurance company had no duty to defend Reinhardt. His lawyer withdrew.

In 2015, the Francos appealed the circuit court's declaratory judgment decision. NIIC's policy covered Reinhardt, they argued. Meanwhile, with the declaratory action appeal pending, the circuit court scheduled a jury trial. Plaintiffs did not request a pause. Though the appeal awaited resolution, the trial started.

Reinhardt did not show up. Turns out, he left prison about a month before jury selection. He had resolved the criminal case associated with the homicide. Per a plea agreement, he

4

pled no contest to negligent homicide in the third degree, a misdemeanor, and received a one-year credit for time served sentence. After he left prison, no one knew where he was.

No lawyer appeared for Reinhardt. A jury listened to the case. On April 28, 2016, it found Reinhardt negligent and awarded the Francos $3,562,000. On May 18, 2016, the court entered final judgment.

Ten months later, the ICA ruled for the Francos in the declaratory action appeal. The circuit court should not have granted NIIC's summary judgment motion. There were disputed issues of material fact about NIIC's duty to defend or indemnify Reinhardt.

NIIC retained the same attorney to represent Reinhardt. But by this point, almost a year had passed since the judgment. The time to file a notice of appeal had long lapsed, and the HRCP Rule 60(b) motion to set aside deadline – one year or "reasonable time" - loomed.

NIIC reached Reinhardt by certified mail. NIIC's letter informed Reinhardt about the ICA's remand, that NIIC had retained the same lawyer for him under a reservation of rights, and that counsel would move to set aside the judgment against him. It included counsel's contact information. Reinhardt signed for the letter.

5

Back on board, counsel hustled to find Reinhardt. He sent letters and left voicemails. Investigators tried to locate Reinhardt. Soon the attorney felt compelled to act. As he put it:

> We did do our best to try to contact him which then puts me in a weird position because what do I do? Sit on my hands and allow the one-year time period to lapse or do I do something and I file the motion? Well, I'm not going to sit on my hands. I'm going to do my best to try to defend him properly, and that's why we filed this motion, your Honor, and that's why we're here today.

On May 18, 2017, counsel moved under HRCP Rule 60(b)(5) (judgment "no longer equitable") and Rule 60(b)(6) ("extraordinary circumstances") to set aside the $3.56 million final judgment. Setting aside the judgment is equitable, counsel insisted. The one-sided, lawyer-less trial shouldn't have happened. Reinhardt awaited an appellate decision about whether NIIC had a duty to defend him *at that trial*.

Plus, Reinhardt alleged several trial errors: (1) the Francos' attorney made improper statements during jury selection; (2) inadmissible hearsay evidence came in; (3) a police officer improperly testified about the identity of the driver (Reinhardt); (4) DNA evidence lacked a proper chain of custody; and (5) counsel made improper closing arguments, including referencing other multi-million dollar jury verdicts, like an ESPN sportscaster's $55 million invasion of privacy

6

case, and deriding Reinhardt's invocation of his Fifth Amendment right against self-incrimination.

Not only did the Francos oppose the Rule 60(b) motion, they moved to disqualify Reinhardt's counsel. They leveled ethical accusations against him. They said he broke several HRPC rules, including failing to get Reinhardt's consent to file the motion.

Regarding the motion to set aside, the Francos argue there were no exceptional circumstances to justify setting aside the judgment. Rather, NIIC just gambled – by not defending Reinhardt at trial - and lost.

The circuit court denied the Francos' motion to disqualify counsel. It granted Reinhardt's motion to set aside the final judgment.

The Francos appealed.

The ICA issued a Memorandum Opinion on February 28, 2023. The ICA only addressed one point of error: Did the trial court err by denying the Francos' motion to disqualify counsel?

Yes, the ICA decided. Counsel lacked authority to represent Reinhardt when he filed the Rule 60(b) motion to set aside. Reinhardt had to expressly consent before counsel moved to set aside the $3,562,000 judgment. Otherwise, counsel defies the Hawai'i Rules of Professional Conduct. With counsel out of the way, the ICA ruled, the Rule 60(b) motion to set-aside

should never have happened.  The ICA vacated the order setting aside the default judgment.

Reinhardt applied for cert, and we accepted.

### III.

"The tripartite relationship between insurer, insured and insurance defense counsel is unique."  Finley v. Home Ins. Co., 90 Hawai'i 25, 29, 975 P.2d 1145, 1149 (1998).  Counsel represents the insured, but the insurance company pays their fee.  This creates a potential conflict of interest.  When the insurance company defends under a reservation of rights, "the insurer may be more concerned with developing facts showing non-coverage than facts defeating liability."  Id. at 30, 975 P.2d at 1150.  This relationship can trigger counsel's ethical obligations under the HRPC.

The Hawai'i Rules of Professional Conduct are elastic, not stiff.  "The Rules of Professional Conduct are rules of reason. They should be interpreted with reference to the purposes of legal representation and of the law itself."  HRPC Scope (eff. 2014).  This is how we construe the rules.  Fragiao v. State, 95 Hawai'i 9, 18, 18 P.3d 871, 880 (2001).

The HRPC and American Bar Association Model Rules of Professional Conduct have another key goal: ensuring that the legal industry's regulations are conceived in the public interest and improve access to the legal system.  HRPC Preamble

cmts. 6, 12 (eff. 2014); Model Rules of Pro. Conduct, Preamble cmts. 6, 12 (Am. Bar Ass'n 2023).  Interpreting and enforcing the HRPC in a way that promotes access to our legal system, rather than restricts it, fulfills a chief aim of professional conduct rules.  That purpose informs our analysis.

We address three issues: whether the circuit court abused its discretion when it denied the Francos' motion to disqualify Reinhardt's attorney; whether the attorney violated the HRPC when he filed a Rule 60(b) motion to set aside the judgment; and whether the circuit court abused its discretion when it set the judgment aside.

We hold that insurance defense counsel may obtain the consent that the HRPC requires by communicating information reasonably sufficient for the client to appreciate the significance of the matter.  See HRPC Rule 1.0(c) (eff. 2014) (defining "consult").  We therefore conclude that Reinhardt's counsel obtained consent and did not violate the HRPC by moving to set aside the verdict.

We further hold that the trial court did not abuse its discretion by granting Reinhardt's HRCP Rule 60(b) motion to set aside.  Equity principles guide 60(b).  JK v. DK, 153 Hawai'i 268, 274, 533 P.3d 1215, 1221 (2023).  We apply 60(b) liberally, "favoring a merits-oriented outcome that bends the rule's finality interest to accomplish justice."  Id.  Neither

9

Reinhardt nor any defense counsel participated in the trial, which contained several putative errors. The circuit court later found that the trial "was the embodiment of an unusual case" justifying relief. We agree.

**A.**

First, the motion to disqualify counsel.

Because there was no ethical violation, the circuit court correctly denied the Francos' motion to disqualify. The ICA erred.

Reinhardt's counsel had no business representing him, the ICA rules. The client didn't consent after consultation – not to the attorney-client relationship and not to the filing of the Rule 60(b) motion to set aside. The lawyer was practicing law without a client, the ICA suggests.

To support its belief that counsel had no client, the ICA looks to Finley and four Hawai'i Rules of Professional Conduct rules: Rule 1.7 (eff. 2014) (not getting consent and a conflict waiver before representing Reinhardt), Rule 1.8 (eff. 2014) (accepting payment from NIIC without Reinhardt's express consent), Rule 1.2 (eff. 2015) (lawyer shall abide by Reinhardt's decisions), and Rule 1.4 (eff. 2014) (lawyer will consult Reinhardt). We take each in turn.

Like the present case, Finley concerns an insurer who retains counsel for an insured party. It examines whether the

insurer also has to pay for the insured's personally retained counsel.  Id. 90 Hawai'i at 27, 975 P.2d at 1147.

The ICA relies on Finley's discussion about the insured's "right to reject" - under a reservation of rights - the insurer's retained counsel.  See id. at 35, 975 P.2d at 1155. The ICA concludes that Reinhardt's lawyer could not establish an attorney-client relationship without his affirmative consent.

True, Reinhardt has a right to *refuse* NIIC's retained counsel.  But the ICA overlooks something - Reinhardt never refused counsel's help.

The ICA misconstrues Finley to mean that unless an insured expressly *consents*, counsel lacks the authority to act.  But Finley stands for express *rejection*.  Thanks, but no thanks. It's the insured's refusal to go with retained counsel that has to be express.  See Finley, 90 Hawai'i at 35, 975 P.2d at 1155. Not refusing may manifest implied consent.  See id. (the defendants' choice to retain their own counsel "did not operate as an exercise of their right to reject the tender of the defense under a reservation of rights").

Finley's conclusion illustrates this point.  There, the insured wanted the insurance company to pay both the lawyers it provided and the lawyers the insured hired itself.  Id.  We held that because the insured did not object to the insurance company's retained counsel, the insurance company only had to

11

pay for the counsel it retained. Id. The determinative fact to our analysis concerned whether the insured *rejected* retained counsel.

Nothing in the record shows that Reinhardt rejected NIIC's offer of counsel. NIIC's May 13, 2017 letter recaps the case and reintroduces his previous attorney. After recounting the circumstances that led to counsel withdrawing, NIIC alerts Reinhardt about its decision to retain counsel and to instruct counsel to quickly file an HRCP Rule 60(b) motion. The letter provides counsel's contact information, the filing deadline, and NIIC's reservation of rights. Reinhardt signed an acknowledgement that he received the certified letter. Though Reinhardt did not expressly consent to counsel, he also did not expressly reject counsel.

If Reinhardt thinks retained counsel has violated any ethical rules, he is not out of luck. He has remedies. As we said in Finley: "These remedies include: (1) an action against the attorney for professional malpractice; (2) an action against the insurer for bad faith conduct; and (3) estoppel of the insurer to deny indemnification." 90 Hawai'i at 35, 975 P.2d at 1155. We found those remedies "adequate to deter unethical conduct on the behalf of the insurer and retained counsel." Id.

We believe the circuit court properly recognized that denying the motion to disqualify would not hurt Reinhardt if he

later decided he didn't want that lawyer to represent him.  As the court put it: "any error in denying this motion can be quickly and harmlessly remedied if Defendant Reinhardt is finally located and contacted and expressed a desire, perhaps, not to retain [Retained Counsel] as counsel at that time."

**B.**

We turn to the Hawaiʻi Rules of Professional Conduct.

Divided loyalties inspire conflict of interest rules. "Virtually all difficult ethical problems arise from conflict between a lawyer's responsibilities to clients, to the legal system and to the lawyer's own interest in remaining an ethical person while earning a satisfactory living."  HRPC Preamble 9.

Rule 1.7 governs conflicts of interest.  A conflict exists if the representations directly conflict or "there is a significant risk that the representation of one or more clients will be *materially limited* by the lawyer's responsibilities to . . . a third person" (emphasis added).  If a conflict exists, the client must give their informed consent to enable the representation.  HRPC Rule 1.7(b).

Rule 1.7's commentary explains that a material limitation is a significant risk that the conflict will "materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client."  HRPC

Rule 1.7(b) cmt. 8.  Comment 13 specifically addresses situations where an insurer hires counsel for an insured.  It requires that "the arrangement should assure the special counsel's professional independence."

Reinhardt's retained counsel did not have a Rule 1.7 conflict.  There was no direct conflict.  The retained attorney's sole client is the insured.  Finley, 90 Hawai'i at 33, 975 P.2d at 1153.  NIIC and Reinhardt shared an interest in contesting Reinhardt's liability and setting aside the judgment. And NIIC's reservation of rights – where NIIC's and Reinhardt's interests do conflict - was litigated in a separate declaratory judgment action and is not at issue here.

There was also no material limitation.  NIIC retained counsel for Reinhardt.  Then it got out of the way.  NIIC did not constrain Reinhardt's lawyer from independently using his professional judgment to advance Reinhardt's interests.  There was no limitation, much less a material limitation, to counsel's representation of Reinhardt.  In the absence of a material limitation, Rule 1.7 is simply not pertinent.  Fragiao, 95 Hawai'i at 20, 18 P.3d 882.

Rule 1.8(f)(1) disallows "compensation for representing a client from one other than the client" unless "*the client consents after consultation*" (emphasis added).  Rule 1.0(c) defines "consultation" as "communication of information

reasonably sufficient to permit the client to appreciate the significance of the matter." Reasonably sufficient information ordinarily includes "a disclosure of the facts and circumstances giving rise to the situation, any explanation reasonably necessary to inform the client or other person of the material advantages and disadvantages of the proposed course of conduct, and a discussion of the client's or other person's options and alternatives." HRPC Rule 1.0 cmt. 2. The needed communication depends on the circumstances. Id.

Regarding Rule 1.8(f)(1), the ICA says that because NIIC paid Reinhardt's lawyer without his express consent, the lawyer broke the rule. We interpret the rule according to its purpose. HRPC Scope. Rule 1.8(f)'s commentary provides that the purpose is to prevent conflicts "[b]ecause third-party payers frequently have interests that differ from those of the client, including interests in minimizing the amount spent on the representation and in learning how the representation is progressing[.]" HRPC Rule 1.8(f) cmt. 11. Commonly, this happens when an alleged conspirator pays a co-conspirator's legal bills. See, e.g., United States v. Hodge & Zweig, 548 F.2d 1347, 1350 (9th Cir. 1977) (drug-smuggling conspiracy allegedly included funding co-conspirators' legal defense).

We held in Fragiao that "the purpose of Rule 1.8(f) is to mandate *disclosure* of the fact that the lawyer's services are

15

being paid for by a third party." 95 Hawai'i at 21, 18 P.3d at 883 (cleaned up). NIIC's letter to Reinhardt provided that disclosure. The letter communicated that counsel would represent Reinhardt in the Francos' suit and NIIC was paying under a reservation of rights. This was enough for Reinhardt to understand the representation. The letter provided Reinhardt with consultation, and his inaction, in the unique insurer-insured context, manifested implicit consent.

To further support counsel's putative ethical lapse, the ICA turns to HRPC Rule 1.2(a). Per that rule, an attorney's legal decisions, the ICA says, require active consent from the client. The rule states: "a lawyer shall abide by a client's decisions concerning the objectives of representation, and, as required by Rule 1.4, shall consult with the client as to the means by which the objectives are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation." HRPC Rule 1.2(a). Rule 1.4(a)(2) requires counsel to "reasonably consult with the client about the means by which the client's objectives are to be accomplished."

NIIC's letter does the trick. The letter alerted Reinhardt that counsel's representation had the same objective as years earlier – to contest Reinhardt's liability for the lethal crash. The letter gave Reinhardt the opportunity to follow up: it

provided counsel's contact information and told him about counsel's imminent motion.  A one-way certified letter falls short of our ideal standard for client communication, but Reinhardt was a difficult client to find; it took two private investigators to finally track him down.  We conclude that the letter sufficed to reestablish representation under the circumstances.

## C.

Once Reinhardt's attorney was back in the game, he had the authority, and the obligation, to file the Rule 60(b) motion. Counsel did not violate the HRPC.  He did the right thing.

One of a lawyer's foremost duties is to advocate diligently for the client's interests.  HRPC Rule 1.3 (eff. 2014).  The Comments to Rule 1.3 state that the lawyer should "take whatever lawful and ethical measures are required to vindicate a client's cause" and act "with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf."  HRPC Rule 1.3 cmt. 1.  Allowing an uncontested $3.56 million judgment to stand unchallenged skirts this duty.

Strategic decisions are part of a lawyer's job.  Not every decision needs a sign-off.  The HRPC talks about the big things - unilateral case-ending decisions, like settling a civil case or taking a plea deal.  HRPC Rule 1.2(a).  On those issues, the client has the ultimate authority.  The lawyer shall abide by

their decision. Id.; HRPC Rule 1.2 cmt. 1. As to *how* to carry out representation, the lawyer may take actions that are impliedly authorized. HRPC Rule 1.2(a).

Here, filing the motion to set aside was implicitly authorized. Reinhardt knew about NIIC's decision to re-retain counsel for him. And NIIC told him about the lawyer's need to quickly file the motion to set aside. Nothing about the motion compromised Reinhardt's rights or ended the case. Rather, the motion preserved Reinhardt's rights and prolonged the case so that he could present a defense on the merits. Counsel didn't need Reinhardt's express consent to file the motion (which plainly protected his client's interests).

Further, counsel was obligated by NIIC's duty of good faith to Reinhardt. Hawai'i law endorses a stout duty to defend. If there's the possibility of coverage under the policy, the insurance company must defend. St. Paul Fire & Marine Ins. Co. v. Bodell Constr. Co., ___ Hawai'i ___, 2023 WL 7517083, at *2-3 (2023). In turn, the insured is entitled to independent representation.

The three-headed relationship of insurer, insured, and insurance defense counsel imposes special good faith duties on the insurer. Finley, 90 Hawai'i at 36, 975 P.2d at 1156. Because there are inherent potential conflicts of interest, an insurance company must meet an exacting and enhanced standard of

good faith when it defends a case under a reservation of rights. See id. at 35, 975 P.2d at 1155.

We have described the insurer's duty of good faith: investigate the accident, retain competent defense counsel for the insured, understand that the *only* client is the insured, fully inform the insured about the defense and all relevant developments to the policy and the lawsuit, and avoid prioritizing the insurer's financial interests over the insured's. Id. at 36-37, 975 P.2d at 1156-57.

Here, NIIC owes a duty of good faith to Reinhardt as an alleged insured. Nothing in the record shows that counsel acted in anything but Reinhardt's best interests by moving to set aside the judgment against him. Cf. Delmonte v. State Farm Fire & Cas. Co., 90 Hawai'i 39, 51, 975 P.2d 1159, 1171 (1999) (referring to retained counsel's duty to look after "the best interests of [the] client," the insured party). Counsel had a duty "to provide competent, ethical representation to the insured." Finley, 90 Hawai'i at 34, 975 P.2d at 1154. Both NIIC and counsel must act to protect Reinhardt's rights. Id. Moving to set aside the judgment against Reinhardt satisfied these duties. *Not* moving to set aside ignores these duties. Even without Reinhardt's express consent to file the motion, counsel fulfilled NIIC's duty of good faith towards Reinhardt.

The duty of good faith also requires that insurance defense counsel provide a defense which meets the HRPC's ethical standards. Id. at 35, 975 P.2d at 1155. As discussed above, retained counsel's representation, including filing the Rule 60(b) motion, complied with counsel's professional obligations.

Counsel did not violate the HRPC by moving to set aside an uncontested $3.56 million judgment against his client. The attorney's move was implicitly authorized by the representation, required by NIIC's duty of good faith, and crucial to protecting Reinhardt's interests.

**IV.**

Last, the circuit court correctly set aside the verdict.

We review decisions on HRCP Rule 60(b) motions for abuse of discretion. JK, 153 Hawai'i at 278, 533 P.3d at 1225. The circuit court did not abuse its discretion – it did the right thing.

Equity principles guide Rule 60(b) motions. Id. at 274, 533 P.3d at 1221. We apply Rule 60(b) liberally, prioritizing a merits-based outcome over the finality of judgments. Id. Generally, our justice system disfavors default, preferring adjudication on the merits. Id. at 278, 533 P.3d at 1225.

Rule 60(b) provides several avenues to vacate a judgment. Rule 60(b)(5) permits relief when "it is no longer equitable that the judgment should have prospective application[.]" The

moving party must show "extraordinary circumstances justifying relief." Matter of Hawaiian Elec. Co., Inc., 149 Hawai'i 343, 362, 489 P.3d 1255, 1274 (2021).

Rule 60(b)(6) operates when "any other reason justif[ies] relief." The moving party must demonstrate "extraordinary circumstances" why it could not have sought earlier, more timely relief. James B. Nutter & Co. v. Namahoe, 153 Hawai'i 149, 169, 528 P.3d 222, 242 (2023). Under both Rule 60(b)(5) and (b)(6), the motion for relief must be made "within a reasonable time."

This case presents extraordinary circumstances. The circuit court held a jury trial while NIIC's duty to defend was pending before the ICA. NIIC's assigned defense counsel had withdrawn. Reinhardt had recently been released from prison and no one – the court or plaintiff's counsel – could contact him. As a result, the trial happened without a defendant or defense counsel sitting at the defense table.

Not only was Reinhardt unrepresented and not present, but several ostensible errors plagued the trial. During jury selection, the Francos' counsel made extensive factual and legal arguments to potential jurors. This may be improper. See, e.g., State v. Altergott, 57 Haw. 492, 499, 559 P.2d 728, 734 (1977) (inappropriate to educate the jury panel on facts, instruct them on law, or present argument). The Francos'

21

counsel also elicited seemingly inadmissible hearsay testimony from the police officers who investigated the crash.

In her closing argument, counsel disparaged Reinhardt for invoking his Fifth Amendment right against self-incrimination: "Why would you refuse to answer questions if you have nothing to hide?" – which may violate Reinhardt's rights under the Hawai'i Constitution. See Ramil v. Keller, 68 Haw. 608, 620-21, 726 P.2d 254, 262 (1986) (leaving open the question of whether the Hawai'i Constitution right against self-incrimination applies to civil cases). Counsel also discussed a sportscaster's $55 million jury verdict. See Ching v. Dung, 148 Hawai'i 416, 433, 477 P.3d 856, 873 (2020) ("closing arguments should only refer to evidence in the record").

The Francos counter that these objections were waived because no one objected at trial (neither Reinhardt nor counsel were in the courtroom). The defense-less trial and its many probable errors created extraordinary circumstances justifying relief.

The trial should not have been defense-less. NIIC should have defended Reinhardt pending a final resolution of coverage. If there's a possibility of coverage - even a remote possibility - the insurer has the duty to defend. St. Paul, 2023 WL 7517083, at *2-3. That duty continues until the obligation has been conclusively eliminated. Newhouse by Skow v. Citizens Sec.

Mut. Ins. Co., 501 N.W.2d 1, 6 (Wis. 1993) ("An insurance company breaches its duty to defend if a liability trial goes forward during the time a no coverage determination is pending on appeal and the insurance company does not defend its insured at the liability trial."); Commerce & Indus. Ins. Co. v. Bank of Hawaii, 73 Haw. 322, 329, 832 P.2d 733, 737 (1992) ("The duty to defend continues until the potential for liability is finally resolved, which in this case would require [the insurer] to remain obligated to defend until either HRCP Rule 54(b) certification was granted and the appeal period had expired or a final judgment had disposed of the entire case.").

Here, the Francos timely appealed the declaratory judgment, keeping NIIC on the hook to defend Reinhardt. During the appellate process, NIIC was obligated to represent Reinhardt in the underlying case. Despite NIIC's breach, this case still presents extraordinary circumstances, including that the circuit court did not stay the proceedings pending resolution of the declaratory judgment, Reinhardt was missing, and there were many alleged trial issues.

Reinhardt's counsel filed his motion to set aside within the reasonable time that Rule 60(b) requires. The ICA remanded the issue of NIIC's duty to defend or indemnify on March 31, 2017, nearly ten and a half months after the final judgment. Once reengaged, counsel moved for relief within one month of

being back on the case and within one year from the judgment – well within a reasonable time. Counsel could not have sought earlier, more timely relief.

The circuit court seems to realize it made a mistake by forging ahead with trial. It concluded "extraordinary circumstances surrounding the trial" warranted HRCP Rule 60(b) relief. We agree.

## V.

We hold that the circuit court properly denied the Francos' motion to disqualify Reinhardt's attorney. We therefore conclude that counsel's motion to set aside the verdict against Reinhardt did not violate the HRPC. We also hold that extraordinary circumstances supported setting aside the verdict.

We vacate the ICA's Judgment, affirm the circuit court's orders, and remand the case to the circuit court.

J. Patrick Gallagher and
Kamalolo K. Koanui-Kong
for petitioner

Sue V. Hansen
for respondents

/s/ Mark E. Recktenwald

/s/ Sabrina S. McKenna

/s/ Todd W. Eddins

/s/ Kevin A.K. Souza

/s/ James S. Kawashima

