**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-20-0000572**
**25-JUN-2024**
**07:54 AM**
**Dkt. 59 SO**

NO. CAAP-20-0000572

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


CHRISTINE DEAN, Appellant-Appellant, v.
DEPARTMENT OF HUMAN SERVICES ADULT PROTECTION SERVICES,
Appellee-Appellee


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 1CC191001357)


SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Hiraoka and Nakasone, JJ.)

In this secondary appeal, Appellant-Appellant Christine
Dean (**Dean**) appeals from the September 1, 2020 Judgment entered
by the Circuit Court of the First Circuit (**Circuit Court**).[1]  Dean
also challenges the Circuit Court's September 1, 2020 Order
Affirming Department of Human Services [(**DHS**)] Notice of
Administrative Hearing Decision Dated July 29, 2019 (**Order
Affirming DHS**).

Dean raises four points of error on appeal, contending
that the Circuit Court erred in:  (1) affirming the DHS
Administrative Appeals Office Hearing Officer's (**Hearing

---

[1]      The Honorable James H. Ashford presided.

**Officer's**) Decision because it contained clearly erroneous findings of fact (**FOFs**) and conclusions of law (**COLs**); (2) ruling that there was substantial evidence in the record to support the Hearing Officer's ruling that the 85-year-old adult man who was allegedly financially exploited by Dean (**Client A**) was a vulnerable adult; (3) ruling that excessive hearsay was allowed at the administrative hearing; and (4) concluding that the Hearing Officer did not violate Dean's Fifth Amendment rights.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Dean's points of error as follows:

(1)  In conjunction with her first point of error, Dean argues that the Circuit Court erred in concluding that the Hearing Officer's decision to affirm DHS's confirmation of financial exploitation by Dean is supported by reliable, probative, and substantial evidence in the record.  Dean's opening brief does not comply with Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rules 28(b)(4), and the argument section of the brief does not track with her points of error.  However, it appears that Dean's primary argument in support of her first point of error is that Client A testified at the administrative hearing that Dean did not financially exploit him.  It further appears that Dean relies on her other arguments to support her first point of error.  Therefore, we consider Dean's other arguments before reaching the issue of whether she has

2

established that she is entitled to relief on this first point of error.

(2) Dean argues that there was not substantial evidence in the record to support the Hearing Officer's decision that Client A was a vulnerable adult.

Hawaii Revised Statutes (**HRS**) § 346-222 (2015) defines vulnerable adult as follows:

> "Vulnerable adult" means a person eighteen years of age or older who, because of mental, developmental, or physical impairment, is unable to:
> (1) Communicate or make responsible decisions to manage the person's own care or resources;
> (2) Carry out or arrange for essential activities of daily living; or
> (3) Protect oneself from abuse, as defined in this part.

The purpose of Chapter 346 is to protect vulnerable adults, while infringing as little as possible on their personal liberty. See HRS § 346-221 (2015). Financial exploitation of a vulnerable person is a form of abuse. See HRS § 346-222.[2]

---

[2] HRS § 346-222 includes the following definition of financial exploitation:

> "Financial exploitation" means the wrongful taking, withholding, appropriation, or use of a vulnerable adult's money, real property, or personal property, including but not limited to:
> (1) The breach of a fiduciary duty, such as the misuse of a power of attorney or the misuse of guardianship privileges, resulting in the unauthorized appropriation, sale, or transfer of property;
> (2) The unauthorized taking of personal assets;
> (3) The misappropriation or misuse of moneys belonging to the vulnerable adult from a personal or joint account; or
> (4) The failure to effectively use a vulnerable adult's income and assets for the necessities required for the vulnerable adult's support and maintenance, by a person with a duty to expend income and assets on behalf of the vulnerable adult for such purposes.
> Financial exploitation may be accomplished through coercion, manipulation, threats, intimidation, misrepresentation, or exertion of undue influence.

The Hearing Officer's Decision includes numerous FOFs citing substantial and probative evidence supporting a determination that Client A was a vulnerable adult. For example, in May of 2018, Client A had reported to Bank of America that he was 85 years old, could not leave the house due to health issues, someone named "Chris" was helping him with shopping (he did not know her last name), and he had memory issues due to an accident. A Bank of America investigation showed open account takeover fraud claims against Client A's account totaling over $22,000 of retail, airfare and cash advance transactions between November 2017 and May 2018. (Dean was referred to Client A by Visiting Angels from about May of 2017 to June of 2018, after he fell and suffered dizziness.) Client A reported to Bank of America that he did not know how Dean would have gotten his credit card, which he said was present at his home; he also said he thought the account was closed. Bank of America said the card was sent to Dean at her Ewa Beach address. When the Department of Human Services Adult Protective Services (**APS**) called Client A's home, Dean answered and reported that she was his caregiver, provided food and meals, picked up his medications, and took him to doctor's appointments. There was evidence that Client A lived alone, had little or no family contact, had possible impairments, and needed some or full assistance with activities of daily living. Client A told APS that he had no idea that he had two additional credit cards (Chase and Discover) he was paying for. APS's investigation into Client A's finances during the period of alleged vulnerability to Dean turned up tens of thousands of

4

dollars of expenses/payments that Client A said he did not know about or did not approve, although he later recanted some of these statements. They included expenses that were, at least, out of the norm for an elderly person to pay to a Visiting Angels caregiver, such as travel expenses, Victoria Secret purchases, and cash. Client A denied telling Dean to send money to someone on the mainland; family members denied receiving money. Client A stated on several occasions that he did not give anyone permission to use his credit cards.

In addition, the Hearing Officer's findings note that there was evidence of a brief interview of Client A by Dr. Raymond Davidson, in which Dr. Davidson stated, *inter alia*, that Client A did not know how much money he had in his accounts, the date, day of week, month and year, or recent meals. This was not the sole evidence of Client A's impairments, as suggested by Dean.

Client A testified at the administrative hearing. In the written decision, the Hearing Officer noted Client A's testimony concerning memory lapses and that his mind "slips." The Hearing Officer found that Client A seemed confused as to why he was called to testify, he got agitated at times and tended to wander. Client A retracted some of his earlier statements at the May 6, 2019 administrative hearing, claimed to have authorized and approved Dean's expenditures, and denied needing a high level of care. We conclude, however, that based on the totality of the evidence before the hearing officer, there was substantial evidence in the administrative record supporting the Hearing

5

Officer's decision that DHS had met its burden to establish that Client A was a vulnerable person.[3]

(3)  Dean argues that the Circuit Court erred in rejecting her challenge to the Hearing Officer's Decision based on the admission of "excessive" hearsay evidence at the administrative hearing.  Dean cites no authority supporting her argument, concedes that hearsay may be admitted in some instances, but says that the hearsay in this case was excessive pointing primarily to APS's log of contacts regarding Client A. Hearsay evidence is admissible at administrative hearings.  See HRS § 91-10(1) (2012); see also Price v. Zoning Bd. of Appeals of Honolulu, 77 Hawaiʻi 168, 176, 883 P.2d 629, 637 (1994); Shorba v. Bd. of Educ., 59 Haw. 388, 397, 583 P.2d 313, 319 (1978).

Dean also appears to challenge the Hearing Officer's assessment of Client A's testimony at the hearing, although pointing to no particular finding or part of the record on appeal.  However, "the credibility of witnesses and the weight to be given their testimony are within the province of the trier of fact and, generally, will not be disturbed on appeal."  Tamashiro v. Control Specialist, Inc., 97 Hawaiʻi 86, 92, 34 P.3d 16, 22 (2001).  The Hearing Officer carefully considered and assessed Client A's testimony, along with the other evidence presented at

---

[3]  In conjunction with this argument, Dean also appears to argue that the Hearing Officer ruled Client A "lacked capacity" and ignored the presumption stated in HRS § 346-251 (2015) that an individual is presumed capable of making decisions concerning their person.  However, "financial exploitation," as defined in HRS § 346-222 does not require a finding that a vulnerable person lacked capacity.  Here, the Hearing Officer's decision is based on her conclusion that DHS correctly confirmed the report of financial exploitation by Dean against Client A, a vulnerable adult.  The Hearing Officer's decision is not based on a conclusion that Client A lacks capacity.

the hearing prior to finding that Client A's statements at the hearing could be attributed to undue influence and manipulation.

We conclude that this point of error is without merit.

(4) Dean argues the Circuit Court erred in rejecting her argument that the Hearing Officer violated her due process rights under the Fifth Amendment of the U.S. Constitution. Dean submits that her constitutional right to "remain silent" (*i.e.*, not to testify) was violated when the Hearing Officer made negative inferences against Dean for not testifying.

We note that "[t]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the Amendment does not preclude the inference where the privilege is claimed by a party to a civil cause." Ramil v. Keller, 68 Haw. 608, 620, 726 P.2d 254, 262 (1986) (cleaned up) (quoting Baxter v. Palmigiano, 425 U.S. 308, 318 (1976)). However, as the Circuit Court correctly stated, "Nowhere in the hearing decision did the hearing officer comment on Ms. Dean's decision to remain silent." Accordingly, Dean's argument is without merit.

Finally, upon consideration of all of Dean's arguments on appeal, including but not limited to those specified above, we further consider her first point of error, *i.e.*, that the Circuit Court erred in not concluding that the Hearing Officer's Decision contained clearly erroneous findings of fact and erroneous legal conclusions, and we conclude that there is substantial, reliable, and probative evidence in the record supporting the Hearing

7

Officer's findings, notwithstanding the existence of conflicting evidence in the record, and the Hearing Officer did not err or abuse her discretion in her conclusions in this case.

For these reasons, the Circuit Court's September 1, 2020 Judgment is affirmed.

DATED: Honolulu, Hawaiʻi, June 25, 2024.

On the briefs:

Daphne E. Barbee,
for Appellant-Appellant.

James W. Walther,
Lynne M. Youmans,
Deputy Attorneys General,
for Appellee-Appellee.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Karen T. Nakasone
Associate Judge